THE STATE ex rel. NEEVES and others vs. THE SUPERVISORS OF WOOD COUNTY.

BRIDGES: *(1) Who bound, in general, to repair. (2) County owning the bridge must repair. (3) Even though landing private property.*
PRACTICE. *(4) When* mandamus *will lie. (5) Appealable Order.*

1. Cities and towns are, in general, charged, by the laws of this state, with the superintendence and repair of roads and bridges within their limits. *Kittredge v. Milwaukee,* 26 Wis., 46.
2. A statute authorized a private company to erect and maintain a toll bridge across a river at a certain point, but provided that the county in which the bridge was situate might purchase it at an appraised value, and that thereupon it should become a free bridge. The county purchased it pursuant to this act. *Held,* that the bridge became the property of the county, which has the sole right to preserve and control it, without interference by the town or city within whose limits the bridge is situate; and that the county alone is *bound to keep it in repair.*
3. The fact that the landing or approach on one side is private property, will not relieve the county from the duty of keeping the bridge in repair, so long as it is kept open for public travel.

The State ex rel. Neeves vs. The Supervisors of Wood County.

4. The county supervisors may be compelled by *mandamus* to keep highways and bridges in repair.
5. Whether an order refusing to quash an alternative writ of *mandamus* is appealable, *quære*.

APPEAL from the Circuit Court for *Columbia* County.

The circuit court for Wood county, upon the application and relation of four persons, residents of that county, and residents and land-owners respectively in the cities of Grand Rapids and Centralia, in that county, issued an alternative writ of *mandamus* to the board of supervisors of the county, commanding them to maintain as a public highway a certain bridge across the Wisconsin river, connecting said two cities, and immediately to repair said bridge, or place it in a safe condition for travel and the transportation of merchandise, or show cause, etc. The respondent moved to quash the writ, on the grounds, 1. That the action of said board (set out in the relators' petition) in refusing to make any appropriation for the bridge in question, was the exercise of a discretionary power, and that its action in the premises was final; and 2. That the writ and affidavits supporting it did not disclose sufficient facts to warrant the court in granting the writ. Pending this motion, the venue was changed to the circuit court for Columbia county. The motion to quash was there denied; and the board of supervisors appealed.

The facts affecting the question of defendant's duty to repair the bridge will sufficiently appear from the opinion.

For the appellant, a brief was filed signed by *Geo. R. Gardner* and *Miner Strope* as attorneys, and by *Gregory & Pinney*, of counsel; and the cause was argued orally by *Mr. Pinney*. They contended, 1. That the effect of making the bridge in question a free bridge, was to make it a public or common one. The statute under which it was purchased by the county, in order that it should be public, does not impose upon the county the duty of repairing or rebuilding it. It was left on the same basis, in this respect, as all public, com-

The State ex rel. Neeves vs. The Supervisors of Wood County.

mon or free bridges; the purchase by the county being merely a donation to the public of the sum expended in its purchase. 1 Tay. Stats., 511, §§ 151–2.  2. That, under the laws of this state, the duty of maintaining the free and common bridges of the county devolves upon the towns or cities within whose limits they are situate, in the absence of any statute imposing such duty upon a county or upon the owner of a bridge dedicated to the public use.  1 Tay. Stats., 349, § 2; id., 477, §§ 1, 3, 5, 7, 8; id., 511, § 151, and 513, § 156; *Kittredge v. Milwaukee*, 26 Wis., 46; *Goodhue v. Beloit*, 21 id., 636; *Swift v. Berry*, 1 Root, 448; *Lewis v. Litchfield*, 2 id., 436; *State v. Franklin*, 9 Conn., 32; *State v. Campton*, 2 N. H., 513; *Sampson v. Goochland*, 5 Gratt., 241.  The cities of Grand Rapids and Centralia succeeded to the duties of towns in that respect by their respective charters.  P. & L. Laws of 1869, ch. 247, sec. 17; Laws of 1874, ch. 275, sec. 1.  This being the general system as to the duty of maintaining and repairing bridges, and counties being authorized to contribute such sums only as their respective boards may see fit to contribute, the granting of this power by particular description is the exclusion of any other power on the part of the appellant in this respect.  The statute does not give the county the control of this bridge, but leaves that to the general law.  The county did not acquire any corporate franchises of a private character, or any proprietary interest in it.  The purchase was in effect a dedication of the bridge to the public; and the general system as to the repair of public bridges at once attached.  2 Bac. Ab., " Bridges "; *Harrison v. Parker*, 6 East, 154; *Hill v. Supervisors*, 12 N. Y., 60; *State v. Campton, supra; Bisher v. Richards*, 9 Ohio St., 501–2; *Dygert v. Schenck*, 23 Wend., 449–50.  3. A *mandamus* will not be awarded where the duty is not positive, clear and distinct. *State ex rel. v. Washington County*, 2 Pin., 552; *Kendall v. United States*, 12 Pet., 613.

The brief for the respondent is signed by *Powers & Briggs*

as attorneys, and by *P. L. Spooner*, of counsel; and the oral argument was by *Mr. Spooner*. It was argued, in substance, 1. That the county is bound to repair the bridge, unless the duty is imposed by statute upon some other body. This would be its duty at the common law (1 Bac. Ab., 784; 3 Com. Dig., 34; 5 Burr., 2594), and the common law is in force in this state, so far as not changed by statute. 18 Wis., 147. 2. That the law authorizing *towns* to build bridges across streams within their limits, does not extend to *navigable* rivers. Across these, bridges can be built only by express legislative authority. 21 Wis., 636. Nor is a town under any obligation to build a free bridge across *any* stream within its limits, if a public ferry be maintained over such stream. If the legislature authorize the erection of a toll-bridge to take the place of the ferry, the company which builds the bridge is bound to maintain it. If such company surrender or forfeit its charter, the town would not be obliged to accept the bridge and keep it in repair. If in the charter of such company a right were reserved to the county to buy the bridge and make it a free bridge, and the county should exercise that right, the burthen of maintaining the bridge would not thereby be cast upon the town. Other towns in the county, tired of paying tolls, and not willing to go back to the ferry, insist that the county shall buy the bridge and make it free. All the towns of the county contribute equally to the purchase of the bridge, and equity requires that they shall share equally in the benefits to be derived from the investment, in future exemption from tolls; but the full price for such exemption includes not merely the sum paid for the purchase of the bridge, but the sums required subsequently to keep it in repair. (Counsel also contended that the bridge here in question is not situate within any town.) 3. That the duty of keeping this bridge in repair is not imposed by statute upon the cities of Grand Rapids and Centralia. The former embraces only territory lying "east of the Wisconsin river" (P. & L. Laws of 1869,

ch. 247, sec. 1; Laws of 1873, ch. 154, sec. 29). The latter seems to have its eastern boundary line in the main channel of the river (Laws of 1874, ch. 275, sec. 1). Neither is empowered to construct, or aid in constructing or repairing, a bridge across the Wisconsin river. 4. That the county has become *the owner* of the bridge by purchase pursuant to the statute (P. & L. Laws of 1865, ch. 178). The very fact of ownership would carry with it the right to take care of the property; but the county board is fully authorized by statute to make all contracts, etc., necessary for the care and management of the county property. R. S., ch. 13, secs. 2, 27. This right excludes any right in the town supervisors or city officers to have the care of the bridge or direct its repair. 5. That as the statute under which the bridge was purchased, declares that upon such purchase it shall "become a free bridge," this requires that it shall be *kept up and maintained* as a free bridge, and imposes the *absolute duty* of so maintaining it. 6. That if a public bridge is kept open for public travel, the duty of the proper authorities to keep it in a safe condition cannot be evaded on the ground that the legal title of one of its approaches is not in the public. 4 Wall., 189; *Houfe v. Fulton*, 34 Wis., 608. The county must either close the bridge against public travel (assuming that it has any right to do so), or keep it in a safe condition. *Springfield v. Comm'rs*, 4 Pick., 68. 7. That, the duty to repair being clear, *mandamus* is the proper remedy. 4 Pick., 68; 16 Wis., 613; 2 Dillon on Mun. Corp., 766, note 3.

COLE, J. The learned counsel on both sides, who argued this cause, desired a decision of the main question in it, namely, whether, on the facts stated in the relation and alternative writ, the county of Wood or the cities of Grand Rapids and Centralia were bound to keep in repair the bridge across the Wisconsin river between those two cities. Considering the importance of the question to the public, we have felt it

our duty to pass upon it, though we are not entirely clear that the order refusing to quash the alternative writ is an appealable one under our statute. However that may be, as the point was not raised nor discussed by counsel, we shall assume, for the purposes of this case, that the order is appealable; but we do not wish to be understood as expressing any opinion upon the question. The question as to the appealability of such an order will therefore remain open, to be determined whenever it may arise in future cases.

It is claimed on the part of the relators, that the duty of repairing and maintaining the bridge in question in a safe condition for public use is imposed upon the county of Wood. On the other hand, the board of supervisors contend that by the provisions of the general statute (ch. 19, R. S.), that duty is devolved upon the cities of Grand Rapids and Centralia, which are entrusted with the superintendence and repair of roads and bridges within their respective limits. *Kittredge v. The City of Milwaukee*, 26 Wis., 46.

By the general system which prevails in this state, the primary care of keeping highways and bridges in suitable repair is devolved upon the towns and cities. In respect to this there can be no controversy. But the inquiry is, whether the facts stated in the relation take this bridge out of the general rule. It is quite apparent that either the cities of Grand Rapids and Centralia or the county of Wood must be charged with the burden of the care and reparation of the bridge; as we fully agree with the counsel of the relators in the remark that a public bridge in this state with no person or body under obligation to keep it in a safe condition for public travel, would be an anomaly in the law, and cannot be tolerated.

It appears that the bridge in question was built in 1867, under the provisions of ch. 178, P. & L. Laws of 1865. By that act a corporation was created, known as the "Wood County Bridge Company," which was authorized to build and maintain a bridge across the Wisconsin river at the point des-

ignated, and to demand and collect tolls from all persons passing over it. By the 6th section it was provided, that at any time after five years from the completion of the bridge, the county had the right to purchase the same at an appraised value; and, upon payment to the company of the amount, within a year after the award, it was declared that " the bridge shall become a free bridge."  The county acquired the bridge in 1873, and became the owner of it; and thereupon the bridge became a free bridge and a public highway, in accordance with the act, and open and free for travel and the transportation of merchandise, to all persons desiring to use the same. The county has, ever since the purchase, kept up and maintained the bridge and paid repairs and the expenses thereon, until about the time of the commencement of this proceeding, when the board refused longer to maintain or repair the same. And this application is to compel the county board to keep up and maintain the bridge in a safe condition for public use. It is not seriously questioned that a *mandamus* is the proper remedy to compel the board to do so, if it is chargeable with that duty.

The learned circuit judge, in the opinion filed overruling the motion to quash the alternative writ, observes that, upon the fact set forth in the relation and admitted to be true, it was plain that, by virtue of the reserved right and the action taken under it, the county acquired the title to and became the owner of the bridge; that the county had the sole and exclusive control of it, subject to the right of the public to use it as a highway or public bridge. And the learned circuit judge held that it followed from this that the county was bound to keep the bridge in repair; that this duty resulted from its ownership and the public character of the bridge. It seems to us that this view of the matter is correct. The fact that the bridge was purchased by the county and became the property of the county, would seem to carry with it as an incident the right to take care of, preserve and control it

And if the county has the right to control it as the property of the county, from the nature of the case this control and management must be exclusive. The cities of Grand Rapids and Centralia have no right to interfere with it, or to give directions for repairing it. It would seem to be self-evident that the power and right to control the bridge, to make repairs upon it and maintain it, cannot reside at the same time in the county and in the two cities. The county certainly owns the bridge, and, if it were injured by a wrong-doer, could maintain an action for the wrong. And, it being the property of the county, the duty of keeping it in a safe condition for the public use rests properly with the county at large. In reaching this conclusion, it is not necessary to invoke the rule of the common law which imposed upon the county the care and superintendence of the highways and public bridges, and made the county responsible for their sufficiency. This case may well rest upon its peculiar facts, and the obligation growing out of ownership. The county board, it seems, after the purchase, proceeded to repair it, and has not until recently claimed that the reparation of the bridge was committed to the cities of Grand Rapids and Centralia.

It is said that no duty to repair can be implied from the purchase, as the sole object of the purchase was to make the bridge free, and that it stands on the same basis and footing as any other public bridge which is to be repaired by the towns or cities in which it is situated. But as the county paid for the bridge and owns it, the duty of repairing rests with the county. The case of *The People v. The Supervisors of Duchess County*, 1 Hill, 50, seems to us quite in point on this question. Though there there was no purchase, but the act authorizing its construction by Drake and Bogardus declared that the bridge, when completed, should be a public bridge, and should be under the control and direction of the supervisors of the county, it was held that, the bridge being under the control and direction of the supervisors, it was to

be repaired and maintained by the county at large. In the case of *Hill v. The Board of Supervisors of Livingston County*, 12 N. Y., 52, the bridge had been a toll bridge, but had become free under the charter. The legislature authorized the board of supervisors of the county to raise money by taxation to aid in reparation of bridges, and to apportion the tax among the towns of the county as might appear equitable. Under the statute, the board raised for the repair of the bridge $900 from the county at large, and $692 from the towns of Avon and Caledonia. The plaintiff was a taxpayer of the town of Avon, and brought this action to recover the amount of the illegal tax which he claimed he was compelled to pay under this apportionment. The majority of the court held that the tax in question was rightfully imposed by the board.

If, as we have indicated by our remarks, the bridge in question was one which the county was bound to keep in repair, the fact that the landing or approach at the west end was private property, cannot change or qualify the duty of the county. The case of *Houfe v. The Town of Fulton*, 34 Wis., 608, is a very clear authority upon that point. So long as the bridge is kept open for public travel, the board is charged with the duty of keeping it in suitable repair.

*By the Court.* — The order of the circuit court refusing to quash the alternative writ, is affirmed.