Carpenter vs. The State.

---

CARPENTER vs. THE STATE.

STATUTE OF LIMITATIONS. *(1) General rule as to reviving debt once barred. (2) Statutes construed. Rights of state not waived as to action on plaintiff's contract.*

1. To revive a debt barred by statute in this state, there must not only be an acknowledgment of it, but an unqualified promise to pay it (*Pritchard*

*v. Howell*, 1 Wis., 118; *Martin v. F. & W. Imp. Co.*, 19 id., 553); and the state itself is entitled to the full application of this principle in suits against it.

2. There is nothing in ch. 323 of 1874, or the amendment thereof by ch. 269 of 1875, amounting to an acknowledgment by the state that it was indebted to the plaintiff *on his original contract* as state printer, therein referred to, to a promise of further payment *thereon*, or to a waiver of the statute of limitations, or of any legal technicality, affecting an action *upon such original contract.*

This action was brought in the supreme court in April, 1875, and a decision of the court sustaining a demurrer to the original complaint will be found reported in 39 Wis., 271–285. After that decision, plaintiff amended his complaint so as to allege, (1) The making of a contract in November, 1858, pursuant to ch. 114, Laws of 1858, by the commissioners of printing with one Ross, for printing and materials to be furnished the state during the years 1859 and 1860. (2) The assignment of such contract by Ross to plaintiff. (3) That plaintiff "duly performed all conditions thereof on his part," and that "the same were fully completed" on the 31st of December, 1860, and that plaintiff on that day "became and was entitled to have and receive from the defendant, upon the said agreement, for work done and materials furnished as aforesaid, a large sum of money, to wit, the sum of $137,278.40 and upwards." (4) That $91,316.27 of that amount has been paid, leaving due the plaintiff $45,962.13 and interest. (5) That plaintiff also published in his newspaper, during the existence of such contract, laws, notices, etc., for the state, pursuant to sec. 19 of said ch. 114, to the value of $32,734.90, which sum was audited and paid to him by the state as a part of said sum of $91,316.27. (6) That the state, in consideration of the facts aforesaid, by ch. 323 of the laws of 1874, and ch. 249 of the laws of 1875, acknowledged the aforementioned indebtedness and promised to pay the same, but no part thereof has been paid. Judgment is therefore demanded for the sum so alleged to be due.

The state demurred to the complaint as not stating a cause of action; and also as showing on its face that no action had accrued to the plaintiff, by reason of the facts alleged, within six years before the commencement of the suit.

*W. F. Vilas,* for the demurrer, argued, in substance, 1. That the complaint contains no direct and specific averment of work done and materials furnished, showing that plaintiff became entitled to receive from the state any specific sum, or any sum greater than that already paid; that the allegation that he "became and was entitled," etc., is a mere conclusion of law; that the allegation is only that he was entitled "to a large sum," the specification of $137,278.40 being under a *videlicet,* the office of which is to mark that the party does not undertake to prove the sum alleged (1 Greenl. Ev., § 60); that the sum of which payment is admitted, "is a large sum;" and that in every view the averment is wholly insufficient. *Thurber v. Jones,* 14 Wis., 16. 2. That ch. 323 of 1874 and ch. 269 of 1875 do not take the case out of the statute of limitations. (1) It is settled in this state that any acknowledgment of liability, to remove the bar of the statute, must take the form of a distinct new promise to pay, absolute in terms, such as would itself support an action, dependent on the barred liability only for its consideration. *Pritchard v. Howell,* 1 Wis., 131; *Martin v. Imp. Co.,* 19 id., 552. The preamble to ch. 323 speaks of the plaintiff as having obtained "large legal advantages" against the state, in a manner indicative of an understanding that these advantages were the fruit of an unconscionable trick of construction, unjust and not obligatory in morals. The state having escaped such liability, the theory of the act seems to be, that the legislature was willing to institute an inquiry whether anything might be due upon a *quantum meruit,* and for that purpose ordered the proceeding by the commissioners of printing directed in the act. But the act expressly declares that *nothing shall be paid* upon the result of such an accounting even —

Carpenter vs. The State.

much less upon the unconscionable contract, — unless a subsequent session should so direct. (2) The addition to sec. 6 made by the act of 1875 merely provides that the *prohibition upon payment* previously made by sec. 6 of the former act shall not be construed to prevent a recovery upon the award of the commissioners, but that an action may be brought *on that award.* (3) The language of sec. 3, ch. 323, waiving legal technicalities and the statute of limitations, cannot avail for the purposes of this complaint. (a) This waiver was manifestly not designed to revive the original contract obligation, but only to prevent the statute being deemed an obstruction to the accounting there provided for; and it is contingent upon the commissioners finding some amount justly due the plaintiff upon the theory on which they were to proceed. (b) The waiver is an integral part of the act; would not have been enacted except as auxiliary to the act; was not designed to have any existence independent of the act; and, the act having been held unconstitutional in its whole scope and object, the waiver must fall with it. *Slauson v. Racine,* 13 Wis., 398; *Lynch v. Steamer "Economy,"* 27 id., 72.

*Geo. B. Smith,* on the same side. [No brief on file.]

*I. C. Sloan, contra:*

The acts of the legislature referred to in the complaint waive the statute of limitations, at least as to the amount that was found due by the commissioners of printing in their report to the legislature; and the demand for judgment is limited to that amount. Sec. 37, ch. 138, Tay. Stats. (p. 1628), expressly recognizes the doctrine that either an acknowledgment of a debt or a promise to pay, if contained in some writing signed by the party to be charged, shall be sufficient evidence of a continuing contract to take the case out of the operation of the statute of limitations. Sec. 1, ch. 323 of 1874, declares: " It being the intention of this act to ascertain the true and exact amount of labor performed and materials furnished under said contract, and to secure the assignee

of said contract just and equitable rates for each and every item of labor or materials, according to the regular established usages of the trade, as proposed by the secretary of state in 1860." Sec. 3 declares: "The state hereby waiving all legal technicalities in the premises as well as the statute of limitation that may have accrued to its legal advantage." If these provisions constitute only a conditional or limited acknowledgment of indebtedness or promise to pay, still it is well settled that such an acknowledgment or promise is valid, and the creditor may recover all sums fairly included within its terms. (In support of this view counsel cited and commented upon *Tanner v. Smart*, 6 Barn. & Cress., 603; *Wetzell v. Bussard*, 11 Wheat., 309; *Davies v. Smith*, 4 Esp.,36; *Edmunds v. Downes*, 2 Cromp. & Mees., 459; *Robbins v. Otis*, 1 Pick., 370; *Bush v. Bernard*, 8 Johns., 407; *Morton v. Chandler*, 8 Greenl., 9; *Webber v. Williams College*, 23 Pick., 302; *Sweet v. Hubbard*, 36 Vt., 294.) In this case, there was, in said ch. 323, not only the declaration of an intention to secure to the assignee of the contract all that he was justly entitled to, not exceeding the sum to which the labor performed and materials furnished might amount according to the rates established by Rounds and Holt (sec. 1), but also an express waiver of the statute of limitations at least to that amount. And by ch. 269 of 1875, after the amount due the plaintiff had been ascertained by the commissioners of printing, and reported to the legislature, it was provided that an action might be brought by the claimant to recover the same.

COLE, J. Since the decision reported in 39 Wis., 271, the plaintiff has amended his complaint, and now proceeds upon the original contract. He alleges that he "duly performed all the conditions" of the contract on his part to be performed, and "that the same were fully completed on the 31st day of December, 1860," on which day he became entitled to receive

from the state a large sum of money, etc. To avoid the effect of the statute of limitations, chapter 323, Laws of 1874, and chapter 269, Laws of 1875, are referred to as showing an acknowledgment of the indebtedness on the part of the state and a promise to pay it. The second ground of demurrer taken to the complaint is, that no cause of action has accrued to the plaintiff within six years next previous to the commencement of the action. We consider this objection well founded, and fatal to the cause of action stated. The rule as to what should be deemed a sufficient acknowledgment of a liability and promise to pay under our statute in order to remove the bar, has long been settled in this state. In *Pritchard v. Howell*, 1 Wis., 131–138, decided in 1853, Mr. Justice Smith states the rule in these words: " We hold, therefore, that, to take the case out of the operation of the statute, there must be an admission of the debt or obligation, and an unqualified promise to pay the debt or perform the contract, made within the time limited by the statute, or what is equivalent to such unqualified promise. The mere admission of a legal liability is not sufficient." The statute, as to parties residing in this state, " does not affect the remedy merely, but directly destroys the right itself, after the time prescribed by it has once elapsed." Dixon, C. J., in *Brown v. Parker*, 28 Wis., 21–27. This shows that the statute does not establish a mere presumption of payment, but extinguishes the contract itself. Again, a resolution of a board of directors of a corporation directing its officers to ascertain upon what terms a contract could be canceled, was held not to constitute a new promise, or an acknowledgment of a debt equivalent to a new promise, so as to take it out of the operation of the statute. *Martin v. The Fox & Wisconsin Improvement Co.*, 19 Wis., 553. Decisions might be multiplied where substantially the same doctrine is laid down by this court, and which show that the law is fully established, that, to revive a debt barred by statute, there must not only be an acknowledgment of the debt but an

unqualified promise to pay it. Doubtless there are many adjudicated cases in conflict with this rule; but it has been deemed the wisest and safest one to be adopted in this state, and we feel bound to adhere to it. It is also settled that the state is entitled to the full benefit of the statute, the same as any other defendant; and often "all the reasons for its application exist with more than ordinary force" in its favor. *Baxter v. The State*, 10 Wis., 454; *S. C.*, 15 id., 488; *S. C.*, 17 id., 588. Bearing in mind the principles of these decisions, let us consider the provisions of the acts of 1874 and 1875, which are relied on as amounting to an acknowledgment of the indebtedness of the defendant and a promise to pay it.

An examination of the acts referred to clearly shows that the legislature neither acknowledged any liability upon the contract in question, nor promised to pay anything thereon. This view is amply sustained by every provision of the two acts under consideration. It is not necessary to give a full analysis of them. The chief justice, in the former decision, thus states the substance and effect of the first section of ch. 323: "This statute recites the facts in a preamble, and provides that, for the purpose of equitably settling the plaintiff's claims, the commissioners of printing shall appoint an expert to compute the actual amount of work done and material furnished under the contract; that thereupon the commissioners shall compute the same at the *quantum valebant* rates reported in 1860 to the secretary of state, as far as those rates apply, and the residue at just and equitable rates, to be ascertained by the commissioners; deduct all payments made on the contract, and report the balance, if any, due to the plaintiff on such computation, to the next legislature, 'without regard to the terms or rates of bid on which the said contract was awarded; it being the intention of this act to ascertain the true and exact amount of labor performed and materials furnished under said contract, and to secure to the assignee of said contract just and equitable rates for each and every item

of labor or materials, according to the regular established usages of the trade, as proposed by the secretary in 1860.' The report of the commissioners is subsequently called an award, both in the statute itself and in the amendment, ch. 269 of 1875." 39 Wis., 281–2. By the third section, the printing commissioners were required, when the value of the work done and materials furnished was ascertained, to compare such value with the amounts paid the plaintiff, and "if the gross sum so paid shall be less than the sum of the total value of all the work and materials as aforesaid, the commissioners of printing shall report the amount of such excess, if any, to the next legislature, and the receipt given by the assignee in 1863 shall be construed to cover only the actual amount paid at that time under said appropriation, the state hereby waiving all legal technicalities in the premises, as well as the statute of limitation, that may have accrued to its legal advantage." Section 6 of the act, as amended by ch. 269, expressly declared "that no sum shall be paid to the said assignee until the next legislature shall ratify the award or finding, if any, of the same accountant and commissioners of public printing as herein provided. Nothing in this section contained shall be construed to prevent the recovery of what may be found to be justly and equitably due said claimant according to the principles of this act, in case such legislature shall neglect or refuse to ratify the award of such accountant and commissioners, an action thereon may be brought by said claimant to recover the same."*

It appears to us very plain that by this language the legislature did not acknowledge any liability on the original contract, and *a fortiori* made no promise to pay any debt thereon. The language must be understood with reference to the matter about which the legislature was acting. And that was, the "finding" or "award" of the accountant and commis-

---

* This sentence is here printed as it stands in the published volume of statutes of 1875. — REP.

sioners proceeding according to the terms of the act. If, on the accounting, a balance was found due the plaintiff, the state waiving in reference thereto "all legal technicalities in the premises, as well as the statute of limitation that may have accrued to its advantage," the commissioners were required to report the amount of such excess to the legislature. And no sum should be paid the plaintiff even then, unless the next legislature should ratify the award. In case the next legislature neglected or refused to ratify the award, the plaintiff was at liberty to bring an action thereon to recover the same. But there is surely no waiver of any legal technicality nor of the statute of limitations anywhere, to an action brought upon the original contract; much less is there an admission of a debt due thereon and an unqualified promise to pay such debt. The waiver is strictly limited to the scope and design of the act; is an essential part of it; and falls with the unconstitutional enactment. There is nothing whatever to warrant the assumption that the legislature, as an independent proposition, intended to waive or would have waived any defense or advantage in respect to an action upon the original contract. This being the case, it follows that the demurrer to the complaint must be sustained.

*By the Court.* — It is so ordered.