Pierce vs. Seymour.

PIERCE vs. SEYMOUR.

*April 19 — May 10, 1881.*

STATUTE OF LIMITATIONS: *What necessary to remove the bar of the statute, after it has run.*

1. It is the settled doctrine in this state, that when the statute of limitations has run against a debt, the debt is extinguished, and that the bar of the statute is not removed by any mere admission of legal liability, but only by an unqualified promise to pay; and under sec. 37, ch. 138, R. S. 1858 (sec. 4243, R. S. 1878), such promise must be in writing, signed by the alleged debtor.

2. The written words, " I think I see my way clear to pay you the $200 and interest I owe you .... I am in hopes another two years will enable me from my present income to clear off all pressing debts.... Rest assured that not a day of pecuniary freedom will pass over my head without your hearing from me "— *held*, not to contain any promise of payment sufficient to remove the bar of the statute.

APPEAL from the Circuit Court for *La Crosse* County.

The case is thus stated by Mr. Justice TAYLOR:

" This action was brought to recover the amount of the following promissory note:

"' £55.                         ST. JOHNS, March 21, 1855.

"' One day after date, for value received (cash lent), I promise to pay Charles S. Pierce, or order, fifty-five pounds, cy., with interest from date.          CHARLES SEYMOUR.'

" The complaint alleges, amongst other things, ' that within six years last past the defendant has, in writing only, acknowledged said indebtedness, and promised to pay the same.' The answer alleged payment, and the statute of limitations. The case was tried by the court without a jury. On the trial, the plaintiff offered in evidence the note set out in his complaint, and two letters written by the defendant addressed to and received by the plaintiff. The first letter bears date July 13, 1865, and the other September 23, 1874. It was admitted that the letters were written and signed by the defendant at the times they bear date, and were mailed at La Crosse, Wis., directed to the plaintiff. The defendant introduced no evidence on the trial. The court found ' that the defendant had not, within the six years last past, in writing, acknowledged said indebtedness or• promised to pay the same;' and held as conclusions of law — *first*, that the indebtedness arising upon said promissory note was barred by the statute of limitations, and such indebtedness was thereby destroyed; and *second*, that the defendant was not indebted to plaintiff on said note. Judgment was therefore rendered in defendant's favor for costs; and plaintiff appealed from the judgment."

For the appellant there was a brief by *Howe & Tourtellotte*, and oral argument by *Mr. Howe:*

" To take a case out of the operation of the statute, there must be an admission and an unqualified promise to pay the debt or perform the contract, made within the time limited by the statute, or what is equivalent to such unqualified promise."

*Pritchard v. Howell*, 1 Wis., 138; *Carpenter v. State*, 41 id., 36. It is held that part payment is such an acknowledgment as will take the case out of the statute, and is the equivalent of a promise, for the reason that the payment of money shows deliberation and is not liable to be misinterpreted. *Cleveland v. Harrison*, 15 Wis., 671. The letters in this case are at least the equivalent of a promise. They show that the respondent intended to promise and supposed he was binding himself to pay. See Broom's Leg. Max. (7th ed.), 540–543. The letter of September 23, 1874, cannot be misconstrued, and certainly shows all the deliberation that any payment could. In none of the authorities has a letter so strong and clear been held insufficient. See *Dodson v. Mackey*, 4 Nev. & Man., 327; 30 E. C. L., 377; Angell on Lim., 241; *Pinkerton v. Bailey*, 8 Wend., 600; *Sluby v. Champlin*, 4 Johns., 461; *McLin v. McNamara*, 2 Dev. & Bat. (N. C. Eq.), 82; *Hunter v. Kittredge's Estate*, 41 Vt., 359; *Eastman v. Walker*, 6 N. H., 367; *McDonald v. Grey*, 29 Tex., 80; *Steele v. Towne*, 28 Vt., 771; *Peavey v. Brown*, 22 Me., 100; *Buffington v. Davis*, 33 Md., 511; *Stearns v. Stearns*, 32 Vt., 678; *Chasemore v. Turner*, 14 Eng. Rep. (Moak's Notes), 304. A promise may be made without the use of the word "promise." Its equivalent, or other language showing the debt to exist unpaid and showing an intention or willingness to pay, is as good both in authority and reason. *Wooters v. King*, 54 Ill., 343; *Pritchard v. Howell*, 1 Wis., 139. In the language of the authorities "an express willingness" to pay is "equivalent to a promise." *McDonald v. Grey*, 29 Tex., 80; *Bell v. Morrison*, 1 Peters, 351; 7 Wait's Act. & Def., 289, 293, 296; Angell on Lim., secs. 223 et seq.; *Winchell v. Hicks*, 18 N. Y., 560; *Bloodgood v. Bruen*, 8 N. Y., 368; *Simonton v. Clark*, 6 Am. R., 752; *Clay v. Clay*, 7 Bush, 97. See also *Kirby v. Mills*, 24 Am. R., 460; *Wilby v. Elgee*, 13 Eng. (Moak), 352; *Quincy v. Sharpe*, 3 Cent. L. J., 313; *Allison v. Bradford*, id., 825; *Kincaid v. Archibald*, 73 N. Y., 189, 194.

*Hugh Cameron*, for the respondent.

Pierce vs. Seymour.

TAYLOR, J.   The only question in this case is, whether the. letter written by the defendant to the plaintiff, bearing date September 23, 1874, contains a sufficient promise to pay the note to take the case out of the statute of limitations.   The letter of July 13, 1865, can have no bearing upon this question, as more than six years had elapsed from the time of writing such letter and the commencement of the action, and more than six years had elapsed from the time of writing that letter to the time of writing the letter dated September 23, 1874. The following is a copy of the last letter:

." LA CROSSE, Wis., September 23, 1874.

" *Charles S. Pierce, Esq., St. Johns, P. Q.*— MY OLD FRIEND: I owe you some letters and some money.   That's plain and clear, is it not?   If I have not written you very freely, it is because I have occasionally witnessed admonitions in confirmation of the advice given by President Van Buren to his gushing son 'Prince John.'   Letters are sometimes ugly things, and therefore I have been shy about writing.   I do think I see my way clear to pay you the $200 and interest I owe you; but since I have been in the West, notwithstanding I have been busy and pushing like a beaver, I have never seen a day or an hour that I have been out of the reach of a cred- itor's goad.   In fact, I have been driven right up sharply on the bit all the time, gaining some, but always carrying heavy incumbrances.

" You are mistaken about my *present* resources.   Many legal restrictions are thrown around what may ultimately be a substantial benefit.   An aged aunt seventy-seven years of age, with a secured life support, and the extinguishment of a mar- ried sister's claim on the estate, requiring a lapse of time and payment of her portion, prevent me from realizing what you suppose has fallen at my disposal.   Still, I am in hopes another two years will enable me, from my present official income, to clear off all pressing debts that have held me as in a black- smith's vise.   I am thus free in stating facts to you in all

honor to free myself from the imputation of being reluctant to pay while having the *apparent* ability. Rest assured that not a day of pecuniary freedom will pass over my head without you hearing from me. Give my kind regards to your family or families. Often, often, often, my thoughts revert to the many social hours in friendly intercourse and generous hospitalities of both families, father's and son's. For one who will on November 15th be 53 years old, I am a 'lively delegate.' I have lost the run of your years. Am I out of the way in putting you about eight or nine years ahead of me?

"Respectfully, sincerely and truly yours,

"CHARLES SEYMOUR."

This court has attempted to settle two things in regard to the construction of the statute of limitations: (1) That when the statute of limitations has run against a debt in favor of the party owing the same, the debt is extinguished; (2) that no mere admission of a legal liability is sufficient to remove the bar of the statute,— to effect that there must not only be an acknowledgment of the debt or obligation, but an unqualified promise to pay the same, and such promise must be in writing, signed by the party making it.

The first proposition, as applicable to contracts for the payment of money, was definitely settled by this court in the case of *Brown v. Parker*, 28 Wis., 21. It had been before settled as to actions involving the title to real estate and personal property in the cases of *Sprecher v. Wakeley*, 11 Wis., 432; *Knox v. Cleveland*, 13 Wis., 247; *Howell v. Howell*, 15 Wis., 55; *Pleasants v. Rohrer*, 17 Wis., 577; *Lindsay v. Fay*, 28 Wis., 177. In the case of *Brown v. Parker*, *supra*, Chief Justice DIXON, in delivering the opinion of the court, speaking of the decisions of this court in the other cases cited, says: "It is true those were not actions upon contracts for the payment of money, or the performance of any other thing; but the principle must be the same in all classes of actions. It seems impossible to make a distinction, upon any sound reason-

ing to be applied to the subject. A statute which is held to extinguish the right in one class of cases, as where property is adversely claimed and possessed, must, its language being the same, also be held to extinguish the right where the subject upon which it operates is a claim or demand founded upon contract." After arguing the case at some length, he concludes by saying: " We think it necessarily and logically follows from the former decisions of this court, that the debt or claim itself, upon contract, is cut off and destroyed by lapse of time under the statute." The language of the chief justice was cited and approved by this court in the case of *Carpenter v. State*, 41 Wis., 36, 41.

These cases settled the question for this state as to the effect which the statute of limitations has upon the right of the holder of a debt or demand against another, against which it has run. Not only the right to maintain an action for the recovery of such debt is taken away, but the debt itself is extinguished. This being the case, the second proposition logically follows: that no mere acknowledgment of such debt can be sufficient to give new life to it, or be the foundation for an action to recover the same; and, although the second proposition was announced by this court in *Pritchard v. Howell*, 1 Wis., 131, and before the first was authoritatively determined by this court, it does not the less depend upon and flow out of the first. This court, in *Pritchard v. Howell*, after full consideration of the authorities holding the contrary doctrine, determined that, in order to take a case out of the statute of limitations on the ground of a new promise, there must be an admission of the debt or obligation, and an unqualified promise to pay the debt or perform the contract, made within the time limited by the statute. That decision was made in 1853, and has been strictly adhered to by this court down to the present time. See *Martin v. Fox & Wisconsin Improvement Co.*, 19 Wis., 553; *Carpenter v. State*, 41 Wis., 28. In *Carpenter v. State*, the present chief justice,

after citing the decisions of this court upon this point, says: " Decisions might be multiplied where substantially the same doctrine is laid down by this court, and which show that the law is fully established, that to revive a debt barred by statute there must not only be an acknowledgment of the debt, but an unqualified promise to pay it.    Doubtless ·there are many adjudications in conflict with this rule; but it has been deemed the wisest and safest one to be adopted in this state, and 'we feel bound to adhere to it."

The decision in *Pritchard v. Howell, supra,* was made before section 37, ch. 138, R. S. 1858 (section 4243, R. S. 1878), was enacted.  But this section was not enacted for the purpose of defining what should take a case out of the statute, nor to extend the established law to new cases, but, on the contrary, to restrict the exceptional cases which the courts had held were taken out of the statute, by requiring that the acknowledgment or promise which, as the law then stood, would take the case out of the statute, though an oral one, should not thereafter be sufficient unless it was made in writing, signed by the party.   If any inference can be drawn from this statute that the legislature supposed, when it was enacted, that an acknowledgment of the debt alone would remove the bar of the statute, the answer is that the same inference might be drawn as to the opinion of the legislature upon the effect of such acknowledgment from the provisions of sections 36 and 37, ch. 127, R. S. 1849, which were in force when the decision in *Pritchard v. Howell* was decided; and the decisions made by this court since the enactment of the Revised Statutes of 1858, were made with full knowledge of the existence of the provisions of said section 37, ch. 138, R. S. 1858, and of the force of the same as bearing upon the legislative construction of the law upon that question.   It is too late, therefore, to invoke the aid of this legislation as decisive that an acknowledgment of the debt will remove the bar of the statute.   It must be held, as it has been by this court, that the law above re-

ferred to was not enacted for the purpose of defining what would remove the bar of the statute, but simply to require that whatever was sufficient for that purpose should only be effectual when in writing, signed by the party. We think the decisions of this court are founded upon sound reason and principle, and we have no disposition to question them. The only doubt I have about the soundness of the decisions is this: having decided that the debt is extinguished and the right absolutely destroyed when the limitation has run, how any promise not based upon some new consideration could revive and give life to such extinguished debt or obligation.

This court having repeatedly and deliberately decided that the bar of the statute cannot be removed when it has run, except by an acknowledgment of the debt and an unqualified promise to pay, it is wholly unnecessary to consider what other courts may have held on this subject. We are compelled to concur upon the question of fact with the learned circuit judge, that no such promise was proved on the trial. The letter relied on undoubtedly acknowledges this indebtedness of the defendant, but studiously avoids making any promise of payment. The defendant ventures the opinion that he sees his way clear to pay the money at some day in the coming future, when the legal restrictions and incumbrances which adhere to the inheritance which has fallen to him from some deceased relative, shall be removed, and through his official income he shall get beyond the reach of the creditor's goad, and the grasp of pressing debts which have held him as a vise for many years, and hopefully assures the plaintiff that when the day of pecuniary freedom shall come, he will hear from him promptly. This letter was undoubtedly intended to give the plaintiff hope that at some time he might expect to realize something on his long-standing claim, but it seems to come far short of being such an unqualified promise to pay the note with interest as the law requires. At best, it was a promise subject to many contingencies and conditions, none of which were

proved to have occurred before the action was brought; and if it were admitted that a conditional promise to pay is sufficient in this state, when accompanied by proof that the condition has been performed, there was no proof in this case to make the conditional promise good. See the late case of *Mattocks v. Chadwick*, 71 Me., 313, where this question of conditional promises is discussed, and many cases cited illustrating the views of various courts upon that subject.

*By the Court.* — The judgment of the circuit court is affirmed.