HESSMAN, Respondent, vs. O'BRIEN, Appellant.

*December 6, 1950—January 9, 1951.*

*Hugh F. Oldenburg,* attorney, and *James L. Murat* of counsel, both of Madison, for the appellant.

*George A. Solsrud* of Madison, for the respondent.

FRITZ, C. J.   The plaintiff alleged in her complaint that on December 5, 1941, defendant made and delivered to plaintiff a promissory note for $1,800 payable to her two years after the date thereof.   In her answer defendant denied having knowledge or information sufficient to form a belief as to her making or delivery of the note to plaintiff; as to whether it has been paid; whether $1,800 and interest from December 5, 1941, are due; whether plaintiff is the owner of the note; and defendant alleged that if the note was executed by her, it was without her knowledge and was given without any consideration and for reasons unknown to her; and that she never received any money or benefit or consideration of any kind which would justify or require the execution of the note.

Plaintiff was a schoolteacher for many years.   Defendant was her sister and the wife of a farmer.   There was evidence which the court and jury could consider credible that in April, 1927, defendant purchased a farm and for part payment of the purchase price she obtained a loan of $4,000 from plaintiff, and as security therefor defendant deeded the farm to plaintiff who, in March, 1928, reconveyed it to defendant; that before purchasing the farm defendant had borrowed $1,000 from the Bank of Wisconsin, and when this loan was reduced to $950, she signed a renewal note, which at her request was cosigned by plaintiff as surety, and thereafter several renewal notes were so signed; and that plaintiff loaned to defendant $2,000 on May 29, 1936, $300 on June 23, 1937, and $400 on January 12, 1940, as evidenced by promissory notes payable to plaintiff, and plaintiff also loaned to defendant on September 20, 1938, $200 as evidenced by a receipt signed by defendant.   She admitted receiving said loans, but testified some of the loans were paid; and she claimed that as of December 5, 1941, some were outlawed under the statute

of limitations and some were not, and that on said date there existed no outstanding obligation owing by her to plaintiff.

Plaintiff contends that when defendant on December 5, 1941, executed and delivered to plaintiff the renewal note for $1,800 on which she seeks to recover in this action, nothing had been repaid to her on any of said loans of $2,000 on May 29, 1936; $300 on June 23, 1937; $400 on January 12, 1940; and $200 on September 20, 1938.

In relation to said renewal note of $1,800 dated December 5, 1941, there was established by evidence on the trial that in 1941 defendant was in need of money to pay a mortgage loan on her farm, and that she requested plaintiff to sign, as surety, a note for a loan to defendant by the Bank of Wisconsin to secure which plaintiff was to put up as collateral her paid-up life insurance policy; that when defendant first approached plaintiff she consented to cosign such note provided defendant would give plaintiff a renewal note of $2,600 for the past-due indebtedness of defendant on notes held by plaintiff, which she believed to be uncollectible; that defendant then refused to sign such a renewal note, but later in December, 1941, she again urged plaintiff to cosign the note at the bank; that plaintiff still insisted on a renewal note, but consented to reduce the amount thereof to $1,800, and as a further inducement to get defendant to give plaintiff a renewal note, plaintiff agreed to make a gift of $600 to defendant. The evidence established that in carrying out that understanding on December 5, 1941, a note for $1,700 payable to the bank was signed by her and cosigned by plaintiff, who put up her life insurance policies as collateral; that in turn defendant then signed and gave plaintiff the renewal note of $1,800 upon which this action is based; and that plaintiff gave defendant a check of $600 as a gift. Defendant admitted that she received that gift of $600, but defendant denied other matters in relation to said renewal note.

At the conclusion of the trial the parties stipulated that in the event judgment was entered for plaintiff the amount would be $1,800 principal and $454.50 interest. In a special verdict the jury found:

Question No. 1: At the time of the execution and delivery of Exhibit 1, the note, which is the subject matter of this litigation, were there any notes or obligations owed by the defendant Amanda C. O'Brien to the plaintiff M. Lena Hessman, which were unpaid? Answer: Yes.

Question No. 2: If you answer Question No. 1 "Yes," then answer this question: Was the note, Exhibit 1, given as a renewal of such previous notes and obligations owed by the defendant Amanda C. O'Brien to the plaintiff M. Lena Hessman? Answer: Yes.

Thereupon the court entered judgment for the plaintiff's recovery of $2,254.50 damages from the defendant with costs. In view of the facts which the evidence clearly established and admitted of finding, as stated above, including the facts found by the jury in the special verdict, there cannot be sustained defendant's contentions that the note for $1,800, which she executed on December 5, 1941, did not constitute a written acknowledgment or promise to pay the alleged past-due obligations to plaintiff so as to toll the statute of limitations; and that no mention was made of any old obligations or a renewal at the time said note was signed. On December 5, 1941, there was adequate consideration for that renewal note of $1,800 because there had not then become barred by the six-year statute of limitations actions upon the above-stated unpaid indebtedness of defendant to plaintiff for the loans evidenced by defendant's notes dated respectively May 29, 1936, June 23, 1937, January 12, 1940, and defendant's receipt dated September 20, 1938. Consequently, defendant's renewal note of December 5, 1941, for $1,800 then constituted sufficient evidence of a continuing contractual obligation of defendant for the payment of $1,800 and interest to then take, to that extent, plaintiff's cause of action for the

recovery of that amount out of the operation of the statute of limitations for six years after December 6, 1941, under sec. 330.42, Stats., which provides, "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the cause out of the operation of this chapter, *unless the same be contained in some writing signed by the party to be charged thereby."* There is applicable in this action the court's statement in *Marshall v. Holmes,* 68 Wis. 555, 559, 32 N. W. 685:

". . . we are of the opinion that an unconditional, unqualified, and unequivocal part payment, voluntarily made by the debtor or any person legally liable to pay it, of a debt already barred by the statute of limitations, is sufficient 'evidence of a new or continuing contract, whereby to take the cause out of the operation of the statute of limitations.' As we understand the statute, the 'effect' of such a payment as is mentioned in sec. 4247, R. S., is the same in all respects as that of an acknowledgment or promise in writing signed by the party to be charged thereby, mentioned in sec. 4243, R. S." See also *Pierce v. Seymour,* 52 Wis. 272, 277, 9 N. W. 71; *Engmann v. Estate of Immel,* 59 Wis. 249, 255, 18 N. W. 182; *Pritchard v. Howell,* 1 Wis. *131.

Manifestly, if an unconditional and unequivocal part payment voluntarily made by the debtor of a debt already barred by the statute of limitations is sufficient evidence of a continuing contract to take the cause of action out of the operation of the statute of limitations, then the unconditional voluntary execution and delivery of a promissory note by a debtor to pay indebtedness which had not become barred by a statute of limitations, likewise constitutes, in view of sec. 330.42, Stats., a new and continuing contract which takes the cause of action to recover said indebtedness out of the operation of the statute of limitations. The discharge of a pre-existing indebtedness constitutes good and sufficient consideration for the new promissory note. As stated in Restatement, 1 Contracts, p. 101, sec. 86:

"Except as stated in sec. 93, a promise to perform all or part of an antecedent contractual or quasi-contractual duty for the payment of money due from the promisor, other than a judgment, is binding if the antecedent duty was once enforceable by direct action, and is either still so enforceable or would be except for the effect of a statute of limitations."

In the case at bar, the renewal note recites "value received." Sec. 116.01 (12), Stats., reads, " 'value' means valuable consideration." Sec. 116.30, Stats., defining value provides: "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time." Sec. 116.29, Stats., provides: "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." Consequently, defendant by signing and delivering the renewal note on December 5, 1941, acknowledged in writing that it was given for consideration.

*By the Court.*—Judgment affirmed.