MURLAS BROTHERS COMMODITIES, INC., Plaintiff-Respondent, v. BUSHMAN, Defendant-Appellant.†

Supreme Court

*No. 76–736.   Argued May 30, 1979.—Decided June 29, 1979.*
(Also reported in 280 N.W.2d 769.)

† Motion for reconsideration denied, with costs, on August 27, 1979.

For the appellant there were briefs by *Tinkham, Smith, Bliss, Patterson & Richards,* and oral argument by *Duane Patterson,* all of Wausau.

For the respondent there was brief by *John P. Louderman, III* and *Eisenberg, Giesen & Ewers,* and oral argument by *Mr. Louderman,* all of Madison.

WILLIAM G. CALLOW, J.  This is an action on a promissory note and a counterclaim for recovery of in-

vestment funds. The issues are whether there was a valid antecedent obligation for the note, and whether the trial court erred in its award of damages.

Ernest Bushman (Bushman), a potato grower, began to invest in commodity futures in the Chicago Mercantile Exchange (Exchange) through a Stevens Point agent of Murlas Brothers Commodities, Inc. (Murlas), in September, 1968. He had during preceding years dealt in commodity futures through another broker. On April 21, 1969, Bushman instructed the Murlas agent in Stevens Point to close the account if his balance of $16,860 was exhausted because he could not afford to put any more money into the account. Bushman made the decisions to buy or sell the commodities himself until May, 1969, when his account went into a deficit of $8,384. Murlas did not close the account, and George Murlas personally assumed control of the account and tried to stem the losses through a strategy of "straddling."[1]

Bushman received confirmation statements from Murlas reporting each transaction. Such statements showed his cash position with Murlas. Notwithstanding the earlier instruction to close the account when it went into deficit, Bushman made no effort to terminate the trading done on his behalf by George Murlas after the account was in deficit. Murlas advanced the funds necessary to settle the Bushman account with the Exchange after each transaction.

On October 27, 1969, Bushman wrote the following note to George Murlas:

"I am enclosing a check of $1000.00 to add to my account. It may not seem much to you but that is all I can spare at this time.

"I appreciate very much what you are doing and want to take this opportunity to thank you but I would also

---

[1] "Straddling" is buying short one month and long the next to avoid the effects of wide swings in the market.

hope very much that you will make me some profitable moves in the very near future."

Bushman testified that by November 25, 1969, his account reached a deficit of $16,000 to $17,000; and at George Murlas's insistence, Bushman executed a promissory note to Murlas in the amount of $25,000. Apparently the note was executed while Bushman was visiting the Exchange as a guest of George Murlas. George Murlas testified that he took the note as "collateral" for Bushman's deficit, and he never credited Bushman's account with the amount of the note. On November 28, 1969, Bushman wrote another letter to George Murlas:

"I want to again express my sincere appreciation for your kind hospitality accorded me on my visit to your office.
"I enjoyed meeting you and your brother Nick very much and feel that our personal contact has helped me restore confidence in your handling my account.
"I beg of you to please handle this account as yours so that we can get out of this mess that I am in.
"Please keep me in mind at all times regarding pork belly transactions or any other commodity and please keep me well informed of all business transactions.
"I have the deepest confidence in you George so please lets turn this account into a profitable one. Again, I'm deeply grateful for your kind consideration and understanding."

On December 3, 1969, Bushman executed a power of attorney authorizing Murlas to buy and sell commodity futures contracts on his behalf. Murlas closed out Bushman's account August 6, 1970. The account had an unpaid deficit of $31,002.50.

Murlas sued Bushman to recover on the note. Bushman counterclaimed for $23,861, the net amount allegedly deposited by Bushman with Murlas during their business relationship.

The jury found: (1) There was consideration for the note executed by Bushman to Murlas; (2) Agents of

Murlas were told by Bushman to close his account when it reached a deficit position; (3) Bushman subsequently authorized or requested Murlas to trade on his behalf; (4) George Murlas improperly traded in the Bushman account after it reached a deficit. The jury found the sum of $14,000 would reasonably compensate Bushman for Murlas's failure to follow instructions to close Bushman's account or his trading improperly after the account reached a deficit position.

The trial court entered judgment in the amount of the note, set off by $14,000, for a net recovery of $11,000, plus interest as provided in the note. Bushman appeals, raising two issues: (1) Was there no valid antecedent obligation for the note? (2) Did the trial court err in its computation of damages?

The jury found there was consideration for the note. No consideration is necessary for a note given in payment of or as security for an antecedent obligation. Sec. 403.-408, Stats.; *Hessman v. O'Brien*, 258 Wis. 243, 45 N.W.2d 730 (1951). Bushman contends that no valid antecedent obligation existed because (1) the transactions were illegal gambling transactions, (2) the debt was incurred in violation of the Exchange rules, (3) the debt was incurred contrary to Bushman's instructions, and (4) the debt was procured by fraud.

Bushman's claim that the note was incident to a gambling transaction was never raised in the trial court. Sec. 241.24, Stats.,[2] generally validates futures contracts

---

[2] Sec. 241.24, Stats., provides:

"241.24 **Board of trade contracts.** No contract for the future purchase, sale, transfer or delivery of personal property through a board of trade or organized commodity exchange is void when either party thereto intends, in good faith, to perform the same; and an intention on the part of either not to perform any such contract does not invalidate it if the other party in good faith intends to perform the same. No such contract is void because

unless neither party intends to perform. In *Carson v. Milwaukee Produce Co.*, 133 Wis. 85, 94–95, 113 N.W. 393 (1907), the court said that even legitimate transactions furnished many opportunities for collateral wager contracts and gambling, and whether or not the parties had such intention is a question of fact and should be submitted to the jury.

Bushman was a potato farmer, and his Exchange transactions in potatoes might reasonably be inferred to be legitimate and consistent with his need to hedge in the potato market, but such an inference would not be applicable to his dealings in pork bellies. The heavy black printed proviso on the confirmations of trade notices sent by Murlas to Bushman provided as follows:

"NOTICE—It is understood and agreed that all futures transactions made by us for your account are either hedges or contemplate actual delivery and receipt of the property and payment therefor; and that all property sold for your account is sold upon the representation that you have the same in your possession actually or potentially."

We conclude that on this record we will not consider for the first time on appeal the issue of intent which would

the vendor was not, at the time it was made, the owner of the property contracted to be sold; and in any action by either party for the enforcement of its terms or to recover damages for a breach thereof it is incompetent to show in defense, by any extrinsic evidence, that such contract had any other intent or meaning than it expresses; and it and all collateral contracts, agreements or securities growing out of it or of which they may have formed the consideration in whole or in part are legal and valid. Nothing herein shall be construed to exclude evidence of fraud in the procuring of any such contract as is first mentioned herein, or of any collateral contract, agreement or security growing out of it, or that any such contract was not entered into upon sufficient consideration, or is not supported thereby, or that both parties intended to make a wagering contract."

be crucial to the question of illegality. *Cf.: Kassuba Commission Co. v. Blodgett,* 155 Wis. 529, 143 N.W. 1060, 145 N.W. 177 (1914).

In *Shea v. Grafe,* 88 Wis.2d 538, 274 N.W.2d 670 (1979), we sua sponte considered a question of contract illegality where the record clearly supported the illegality. Here the illegality does not appear on the surface of the transaction, and the trial court was not presented with the issue. We, therefore, decline to reach the question here.

Bushman seeks to be excused from the note obligation because the debt was incurred in violation of an Exchange rule requiring a broker to close an account with insufficient margin until the customer provides the required margin. The record presented to this court is inadequate to determine the purpose of the rule alleged to be violated, and we find nothing in the Commodity Exchange Act, 7 USC, sec. 1, et seq., that would give guidance in this case. We decline to give this Exchange rule the force of public policy necessary to render a collateral obligation unenforceable. *See: Du Pont v. Neiman,* 156 Cal. App.2d 313, 319 P.2d 60 (1957).

Bushman argues, third, that there is no valid antecedent obligation because Murlas did not follow his instructions to close the account. This contention was accepted by the jury, and it awarded him damages of $14,000. However, Bushman's subsequent letters and granting power of attorney to Murlas clearly supports the conclusion that following the trading between May and October Bushman authorized and requested Murlas to trade on his behalf. Accordingly, Bushman cannot escape liability on the note given in November, 1969, on the basis that Murlas violated his instructions to close the account.

Bushman argues, finally, that he was induced to execute the note by fraudulent representations. Bushman

did not request a jury instruction on fraud and misrepresentation and made no objection concerning the absence of a question on fraud and misrepresentation. We conclude he waived any error based on fraud because this court has said it "will not consider new grounds of relief which are not adequately brought to the attention of the trial court." *Hein v. Torgeson,* 58 Wis.2d 9, 14, 205 N.W.2d 408 (1973).

Bushman maintains Murlas's damages should be limited to the deficit amount existing on the date the note was executed. Bushman argues the note should be treated as a security interest under Article 9 of the Uniform Commercial Code, *see,* Chapter 409, Stats. We do not agree. The jury found, on credible evidence, that there was consideration for the note. Accordingly, no accounting is required to support Murlas's loss.

Bushman argues that Murlas's damages should be reduced because Murlas was in violation of sec. 551.31, Stats., which requires licensing by persons dealing in securities. Prior to January 1, 1970, the effective date of the statute, Bushman executed a power of attorney authorizing Murlas, a Chicago broker, to act for him. The record makes no further inquiry into the circumstances of the granting of the power of attorney or the degree of communication between Murlas and Bushman from January 1, 1970, to the August date when the account was closed. Thus we cannot say the transactions at issue were Wisconsin transactions. Under the doctrine of the presumption of regularity, we are not prepared to say, in these circumstances, that Murlas was in violation of the Wisconsin statute by its failure to be licensed in Wisconsin.

In *Kilgust Heating v. Kemp,* 70 Wis.2d 544, 549–50, 235 N.W.2d 292 (1975), we said "[w]here full recovery is had on a claim for a contract price, and the trial in-

voles no more than putting the plaintiff to proof of the defendant's liability, the requirement that the claim be liquidable in advance is met." Under these circumstances prejudgment interest, as provided in the note, was properly awarded. In any event since we do not limit the loss to that existing on the day the note was executed and do not exclude the loss incurred after January 1, 1970, because of lack of licensing, it is apparent that the actual loss experienced by Murlas exceeded the face amount of the note.

Bushman did not have ready cash, and Murlas supplied money being used in the multiple transactions. The note recognized that Murlas was bankrolling these transactions. The jury verdict is adequately supported by the record, and the trial court correctly entered judgment on the verdict.

*By the Court.*—Judgment affirmed.

† Motion for reconsideration denied, without costs, on August 27, 1979.