FEDERAL DEPOSIT INSURANCE CORPORATION, a United States Corporation, Plaintiff,

v.

Geoffrey E. ROCKELMAN, Defendant.

No. 76–C–517.

United States District Court, E. D. Wisconsin.

Nov. 3, 1978.

As Amended Nov. 6, 1978.

---

Gregory G. Wille, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for plaintiff.

Heiner Giese, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is a civil action wherein the plaintiff, Federal Deposit Insurance Corporation (FDIC), seeks payment on a promissory note in the amount of $154,958.54. Plaintiff has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, alleging that there is no genuine issue as to any material fact in this case and that plaintiff is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

A review of the facts shows that defendant Rockelman, the owner and president of a construction company in the Milwaukee area, was approached by James Sullivan, a neighbor and senior officer of American City Bank & Trust Co. (American City Bank), about the purchase of American Bankshares Corporation (Bankshares) stock. Sullivan told the defendant that a number of officers had bought control of the Bank in a recent offering of the stock of American Bankshares Corporation. American Bankshares Corporation is the holding company of American City Bank. Sullivan stated that the new group was going to resolve problems the Bank was having and that there would be another stock offering because the Comptroller of the Currency felt the Bank needed additional capital. (Rockelman Deposition, pp. 25–32).

During September or October of 1974 Sullivan again told the defendant that the bank was continuing to have problems with bad loans and that the bank had to raise $3,000,000 to $5,000,000 in additional capital as required by the Comptroller of the Currency to increase the loan reserve for these problem loans. (Rockelman Deposition, pp. 42–3). Sullivan also told the defendant that the prior stock offering had been in response to the Comptroller's demand for more capital and that the control group's purchases had been financed through loans from an Illinois bank. (Rockelman Deposition, p. 44).

Rockelman acknowledged that he was told that, if he purchased stock, he would be paid sufficient dividends to pay interest on the purchase money loan and that the stock would appreciate in value to a point where a portion of it could be sold to retire the loan. (Rockelman Deposition, pp. 51–2). He also stated that, although he did not conduct his own investigation as to the prospect for the stock appreciation, he did have knowledge that the stock was not trading at the time and that it was selling for over $20 a share at one time. (Rockelman Deposition, p. 52; Rockelman Affidavit, ¶ 4).

On December 31, 1974, defendant received a call from an American City Bank employee advising him that the new stock offering had been arranged. That evening he purchased Bankshares with the proceeds of a loan in the amount of $150,000 obtained from American Hampton Bank. (Rockelman Deposition, pp. 49, 56–61). Defendant knew that American Hampton Bank was an affiliate of American City Bank. (Rockelman Deposition, p. 75).

On April 29, 1975, defendant executed a renewal note in the amount of $154,958.34 in favor of American City Bank. Defendant understood that the proceeds of this note went to discharge and pay his obligation for principal and interest on the American Hampton Bank note of December 31, 1974. (Rockelman Deposition, p. 76). This note was due on April 28, 1976. No payment of principal or interest has been made.

Subsequently, American City Bank failed. Following a declaration of American City Bank's insolvency, the FDIC was appointed as Receiver of the bank. Subsequently the Receiver sold certain of the bank's assets including the Rockelman note to the FDIC in its corporate capacity pursuant to a statutorily authorized and court-approved plan of liquidation.

Defendant denies that he is liable for payment of his note, alleging fraud in his December 31, 1974 purchase of Bankshares stock as an affirmative defense. Defendant argues that no consideration was given for the note in issue, that this second note was as invalid as the first, and that American City Bank officers failed to disclose material information to the defendant.

■ Although defendant states that he did not receive any cash in exchange for his second note, he knew that the proceeds of this note went to discharge his note of December 31, 1974 with American Hampton Bank. (Rockelman Deposition, p. 76). Defendant's obligations for principal and interest on his prior American Hampton note were discharged. The discharge of a prior indebtedness constitutes sufficient consideration for a subsequent note. *Hessman v. O'Brien,* 258 Wis. 243, 45 N.W.2d 730 (1951).

Thus, the Court finds that there was sufficient consideration for the note in issue.

■ In addition, the Court finds that there is adequate consideration to support the note to American Hampton. Although there was some question as to the exact value of the stock at the time of purchase, the Rockelman deposition indicates that the stock had some value. There must be some consideration to support a contract, but "the law is not concerned with the mere inadequacy of consideration." *Home Savings Bank v. Gertenbach,* 270 Wis. 386, 395, 71 N.W.2d 347, 352, 72 N.W.2d 697 (1955).

This Court is satisfied that the stock in American Bankshares Corporation constituted sufficient consideration. Therefore, this Court finds that the affirmative defense of lack of consideration presents no genuine issue.

Assuming that the circumstances of defendant's involvement in the Bankshares stock transaction of December 31, 1974 were material and relevant to his American City Bank loan of April, 1975, the Court must determine if these circumstances establish any defense to defendant's liability on the note.

A review of the history of the FDIC provides a basis for the analysis of the issues involved in this action.

The FDIC was established under authority of section 8 of the Banking Act of 1933 and section 101 of the Banking Act of 1935 which went into effect August 23, 1935 and provided the permanent plan of deposit insurance contained in existing law. The Corporation began insuring bank deposits on January 1, 1934. H.R.Report 2564, 81st Cong., 2d Sess., 1950 U.S.Code Cong.Service, p. 3765.

■ The Congressional purpose in creating the FDIC was "to promote the soundness of banking and to aid the government in the discharge of its fiscal transactions." *Freeling v. Federal Deposit Insurance Corporation,* 221 F.Supp. 955 (W.D.Okla.1962). See, *Doherty v. United States,* 94 F.2d 495 (8th Cir. 1938).

The FDIC works to bring to depositors sound, effective and uninterrupted operation of the banking system with the resulting safety and liquidity of bank deposits. *See, Federal Deposit Insurance Corp. v. Barry,* 453 F.Supp. 81 (E.D.Wis.1978).

Congress has continued its interest in financial transactions in this country and has passed various amendments to the initial legislation creating the FDIC. It is clear that Congress' overall purpose has been to protect the public interest and promote confidence in the banking system.

Protection of the FDIC in the performance of its duties has also been a concern. Section 1823(e) of 12 U.S.C. provides in relevant part:

> Whenever in the judgment of the Board of Directors such action will reduce the risk or avert a threatened loss to the Corporation and will facilitate a merger or consolidation of an insured bank with another insured bank, or will facilitate the sale of the assets of an open or closed insured bank to and assumption of its liabilities by another insured bank, the Corporation, may, upon such terms and conditions as it may determine, make loans secured in whole or in part by assets of an open or closed insured bank, which loans may be in subordination to the rights of depositors and other creditors, or the Corporation may purchase any such assets or may guarantee any other insured bank against loss by reason of its assuming the liabilities and purchasing the assets of an open or closed insured bank. Any insured national bank or District bank, or the Corporation as receiver thereof, is authorized to contract for such sales or loans and to pledge any assets of the bank to secure such loans.

Further protection for the FDIC was provided for in the 1950 amendments to section 1823(e). This section was amended to provide that no agreement which tended to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under the section would be valid against the Corporation unless the agreement:

(1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board of committee, and (4) shall have been continuously, from the time of its execution, an official record of the bank. 12 U.S.C. § 1823(e), as amended.

In the instant case, American City Bank was declared insolvent on October 21, 1975 and the Comptroller appointed the FDIC as Receiver. The FDIC, as Receiver of the bank, petitioned this Court for an order approving the sale of assets and assumption of certain liabilities pursuant to the terms of two agreements. One agreement was between the Receiver and the Marine National Exchange Bank of Milwaukee (Marine). The other was between the Receiver and the FDIC, in its corporate capacity. The FDIC as Receiver and the FDIC as a corporation are to be treated as separate parties. *Federal Deposit Insurance Corporation v. Vogel,* 437 F.Supp. 660 (E.D.Wis. 1977); *Federal Deposit Insurance Corporation v. Design & Development, Inc.,* 73 F.R.D. 442 (E.D.Wis.1977).

This Court approved the purchase and assumption transaction on October 21, 1975 and the agreements were thereupon executed. *See: In the Matter of the Liquidation of American City Bank & Trust Company, N. A.,* Civil No. 75–C–609 (E.D.Wis. 1975).

The FDIC as Receiver subsequently sold a large portion of the assets and liabilities of the American City Bank to the Marine Bank. However, the value of the assets received did not equal the amount of liabilities assumed less the premium paid for the value of the bank's business as a going concern. Therefore, the Receiver required some additional cash to balance the transfer to the Marine Bank and to complete the sale. The FDIC, in its corporate capacity, agreed to purchase from the Re-

ceiver all the assets of American City Bank that were not being transferred to the Marine Bank. The cash paid by the Corporation to the Receiver was then paid to Marine so that a proper balance could be achieved.

This Court has been deeply involved in actions arising out of the insolvency of American City Bank and has long considered the various problems that have arisen as a result. In addition to cases already resolved, some forty cases involving the FDIC and various individuals or legal entities are currently before this Court.

Because of this Court's involvement, it has carefully weighed the problems addressed in this case. The Court has examined the relevant federal statutes, the case law concerning the FDIC in similar situations, and the history and purpose of the FDIC.

Based on this analysis the Court concludes that, although the FDIC, in its corporate capacity, is not a holder in due course within the meaning of that term under the Uniform Commercial Code, Congress intended by means of section 1823 to clothe the Corporation with the protections afforded a holder in due course and shield the Corporation against many defenses that would otherwise be available. This is the purpose and effect of this section.

This conclusion furthers the intent of Congress to promote soundness in banking and to aid and protect the FDIC in the conduct of its duties. While there are some valid defenses that may be available against the FDIC, the Court need not address that issue at this juncture.

As far as the instant case is concerned, the Court is convinced, after its careful analysis, that the affirmative defense of fraud in the inducement alleged in this case is not a valid defense against the FDIC in its corporate capacity.

Therefore, this Court concludes that there is no genuine issue as to any material fact in this case. Plaintiff's motion for summary judgment must be and is hereby GRANTED.

SO ORDERED this 3rd day of November, 1978, at Milwaukee, Wisconsin.