FEDERAL DEPOSIT INSURANCE CORPORATION, a United States Corporation, Plaintiff,

v.

Lawrence S. BALISTRERI, Defendant.

No. 76–C–600.

United States District Court, E. D. Wisconsin.

May 31, 1979.

John W. Hein, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for plaintiff.

Henry G. Piano, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

ROBERT W. WARREN, District Judge.

The above-captioned case is a note collection action being prosecuted by the Federal Deposit Insurance Corporation (FDIC) as receiver for the American City Bank & Trust Company (American). The note in question was drawn in favor of American on April 4, 1975 in the principal sum of $156,305.01. The proceeds of the note were not distributed to defendant but were instead used to discharge defendant's liability on four prior notes. The note is in default.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, affidavits, depositions and other papers on file indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Furthermore, under Rule 56(e) of the Federal Rules of Civil Procedure, a party cannot rest on the allegations of his pleadings, and thus a court can enter summary judgment, if appropriate, when the opposing party fails to respond with facts supporting his complaint.

In order to resolve the summary judgment motion, a brief review of the facts and issues is necessary.

In opposition to this action, defendant relies upon three affirmative defenses.

(1) Violation of § 10(b) of the Securities Exchange Act of 1934. Defendant requests recission under § 29(b) of the 1934 Act and section 551.59(7) of the Wisconsin Statutes claiming that certain misrepresentations were made to him concerning two stock sales to him of the securities of American's holding company the American Bankshares Corporation. Specifically defendant claims:

(a) a misrepresentation that the value of the stocks sold in May, 1975 was $20/share.

(b) a misrepresentation that the stock sale proceeds were to be used to bolster the financial condition of American.

(c) failure to disclose the existence of known loan problems.

(d) a misrepresentation that certain of the stock would be registered with the Securities Exchange Commission, which it was not.

(2) An oral promise of no personal liability was allegedly made to defendant. The nature and extent of this promise was that defendant would incur no personal liability in borrowing funds to make the above-referenced stock loan purchases.

(3) Defendant also relies upon economic duress. Defendant claims that he was forced into purchasing American Bankshares Corporation securities by economic duress.

Defendant became president of the American Menomonee Falls Bank in December of 1971 and remained in that capacity throughout the period relevant to this lawsuit. Defendant attended the University of Wisconsin-Milwaukee as an undergraduate and the University of Wisconsin

Graduate School of Banking in Madison, Wisconsin. American Menomonee Falls Bank was an affiliate of American in the American Bankshares Corporation holding company.

In May of 1973, through his employment position, defendant became aware of earnings and loan to deposit ratio problems American was suffering. Later, in March of 1974, defendant was further exposed to American's difficulties when he was assigned to work on problem loans at American. Defendant worked several days each week on these loans for six months.

The first stock purchase occurred in May of 1974. At that time defendant purchased 5000 shares of $5.00 par value American Bankshares stock for $20.00 per share for a total purchase price of $100,000. Defendant financed this purchase with a loan from the Colonial Bank & Trust Company of Illinois. The loan was arranged, according to defendant, by employees and officers of American and American Bankshares and was evidenced by a note executed on or about May 14, 1974 in the principal sum of $101,500. As security for the loan, defendant pledged the 5,000 shares of stock.

In his deposition testimony defendant admitted that he was informed that the stock was being sold in response to the Comptroller of the Currency's demand that American City Bank must have additional capital. Defendant also admitted that it was his understanding that the capital raised would be infused immediately into American. In his testimony, defendant claimed that he was told by the officers of American that he would have no personal liability on the loan by reason of an exculpatory clause to be included in the loan documents. However, this promise was not in writing and, in fact, the loan documents with Colonial Bank do not contain a non-recourse or exculpation provision.

Furthermore, in his deposition testimony concerning the May, 1974 stock purchase, defendant commented upon the valuation of the stock. Defendant admitted that he inquired about the high price and that he was told that the price that was set by the Board of Directors.

Concerning the May, 1974, transaction, defendant testified that he inferred from his conversations with top management that if the stock sales were not made, the holding company, American Bankshares, would go down and, consequently, defendant would be out of a job. There is no testimony that defendant was actually threatened with the loss of his job.

After his purchase, specifically in July of 1974, defendant learned that some of the capital raised in the stock sale to defendant and others was not passed through to American but was instead used to pay off certain debts of American Bankshares. In December of 1974, at the time defendant made his second stock purchase, he was given a copy of an October 29, 1974 letter from the Regional Administrator of National Banks to the Board of Directors of American. This letter noted that the $3,000,000 raised in the stock sale had been held by American Bankshares to pay off its debt rather than being passed through to American. Furthermore, at that time defendant was also given a list of all problem loans at American which were not accruing interest.

In September of 1974, defendant was aware that American's financial problems were so severe that there was a possibility that American would be closed. In order to raise additional capital, American again proposed a stock sale and approached defendant in December of 1974. Defendant was informed of American's need for additional capital and was asked to purchase 9,091 shares of American Bankshares stock at $5.50 per share. On December 31, 1979, defendant purchased these shares financing the purchase with a $50,000 loan from the American Hampton Bank.

As indicated earlier, on April 4, 1975 defendant signed a new note in the principal sum of $156,305.01 drawn in favor of American. The proceeds were used to pay off the two stock loans and to pay two small loans made by Colonial Bank to defendant in the late summer and early fall of 1974. The note made in favor of American is the note in issue, which fell due April 4, 1976.

The FDIC became the holder of the note after the failure of American. On October 21, 1975 the Comptroller of the Currency declared American insolvent and immediately thereafter the FDIC was appointed as receiver. On the same day as its appointment, the FDIC as receiver, with the approval of this Court, entered into a contract of sale with the FDIC in its corporate capacity. The FDIC, in its receiver capacity, sold certain assets of the FDIC, including the note at issue, to the FDIC in its corporate capacity. Having purchased this asset from the receiver, the FDIC, in its corporate capacity, receives the legal benefits of 12 U.S.C. § 1823(e).

By stipulation, defendant admits that the note at issue was made by him in the amount of $156,305.01 in favor of American. He further admits that the note fell due on April 4, 1976 and that it bears interest at the First Wisconsin National Bank prime rate. The stipulation establishes that a demand was made of May 26, 1976, that there is due and owing the principal sum of $155,600.46 plus interest through July 20, 1978 of $37,095.80 and that interest continues to accrue at the rate of $37.30 per day.

Having admitted liability on the note, the only question presented by the FDIC's motion for summary judgment is whether any of defendant's affirmative defenses create a genuine issue of fact.

■■■ Before reaching the grounds relied upon by defendant as a basis for summary judgment, the Court must discuss the import of *FDIC v. Rockelman*, 460 F.Supp. 999 (E.D.Wis.1978). There this Court held:

[A]lthough the FDIC, in its corporate capacity, is not a holder in due course within the meaning of that term under the Uniform Commercial Code, Congress intended by means of section 1823 [of Title 12 U.S.C.] to clothe the Corporation with the protections afforded a holder in due course and shield the Corporation against many defenses that would otherwise be available. This is the purpose and effect of this section. *Id.* at 1003.

Based upon *Rockelman* only a certain class of defenses are available against the FDIC in its corporate capacity. Those defenses, e. g., fraud in the factum, are the so-called "real defenses" of the type outlined in the Uniform Commercial Code § 3–305. (*See* Wis.Stats. § 403.305). The defenses raised by defendant are best characterized as involving fraud in the inducement because the defendant is attacking the agreements underlying the note contract rather than the validity of the contract inherent in the making of a note. Therefore, under authority of *Rockelman*, defendant's affirmative defenses are not available against the FDIC in its corporate capacity.

However, the Court will not rely entirely upon *Rockelman* since the interpretation of 12 U.S.C. § 1823(e) embodied therein has not as yet been considered by a higher court. Therefore, the Court will consider the grounds for summary judgment raised by the FDIC in its legal brief.

■■■ The note at issue in this action was made to release four earlier notes made to parties other than American. It must be noted that defendant has not charged impropriety in that transaction. Furthermore, under Wisconsin law the release of a pre-existing debt, as occurred here, is adequate consideration. *Hessman v. O'Brien*, 258 Wis. 243, 45 N.W.2d 730 (1951). The defenses raised by defendant involve the two 1974 transactions and not the one at issue.

■■■ The defenses raised by defendant as not involving the current obligation are simply not available to defendant against the FDIC in this case. Any relief available to defendant on the alleged stock sales properly lies with the receiver and not the FDIC in its corporate capacity as a purchaser of the note at issue. There are further grounds for granting summary judgment in FDIC's favor, however.

One of the affirmative defenses raised by defendant is that, with respect to the Colonial note and to the American note at issue herein, defendant had received an oral promise that he would incur no personal liability. The notes at issue, in fact, contain no written exculpatory clause. The ques-

tion presented is whether an oral promise is enforceable to contradict a written contract.

■■■ With reference to defendant's allegation that he would incur no personal liability on the Colonial note, under the common law parol evidence rule as applied in Wisconsin, an oral modification or contradiction of a written contract is inadmissible and therefore unavailable as a defense. *Production Credit Association v. Rosner*, 78 Wis.2d 543, 255 N.W.2d 79 (1977); *Morn v. Schalk*, 14 Wis.2d 307, 111 N.W.2d 80 (1961).

■■■ Furthermore, the FDIC in its corporate capacity is shielded by the effects of 12 U.S.C. § 1823(e). Having purchased the asset of a closed bank, here the note in issue, the FDIC is entitled to rely on the bank records. Absent a written agreement or bank record, the defense asserted by defendant is unavailable against the FDIC in this action. *Federal Deposit Insurance Corporation v. Vogel*, 437 F.Supp. 660 (E.D. Wis.1977); *Dasco v. American City Bank & Trust Company*, 429 F.Supp. 767 (D.Nev. 1977).

Even in his deposition, defendant admitted that the Colonial note contained no exculpatory clause. Furthermore, neither the Colonial note nor the note in issue contain such clauses, although such clauses could have been easily incorporated. Based upon 12 U.S.C. § 1823(e), the alleged oral promises asserted by defendant as an affirmative defense cannot defeat the FDIC's right to enforce the April 4, 1975 note.

■■■ With respect to both stock sales, defendant alleges as defenses that certain misrepresentations were made which make the stock sale voidable under federal law, sections 10(b) and 29(b) of the Securities Exchange Act of 1934, and Wisconsin law, Wis.Stat. § 551.59(7). The Wisconsin Securities Act is similar to the federal act, *i. e.*, misrepresentation is the key. *Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (10th Cir. 1975). For the reasons set out below defendant's claims of fraud are unsupported by his own deposition testimony. The four claims of fraud will be discussed separately.

Defendant claims that American misrepresented that the value of the shares in the May 1975 sale was $20.00 per share. Defendant was not told that the value of the stock was $20.00 per share. Defendant testified in his own deposition that the board had set the price at $20.00. Defendant did not testify that he was given any assurance of the value, and, furthermore, there is no evidence to support his claim of misrepresentation. By defendant's own deposition testimony, he refutes the claim of misrepresentation.

Defendant also alleges that he bought stock in reliance upon the representation that the capital raised would be passed through to American rather than being held in the holding company. This claim must fail for two reasons. First, defendant himself testified that he considered the condition of the holding company to be important. He himself realized the need for the holding company to survive. Second, and most important, this representation was not material in this case since it is extremely unlikely that defendant would have acted differently even if he had been told that the capital was not to be passed through. He knew the serious situation facing American and its holding company. Even if the representation had been made, it simply was not material.

Defendant further claims that American misrepresented their loan situation. He alleges that American failed to inform him, at the time of the May, 1974, loan and stock purchase, that certain loans were not accruing interest. This allegation, however, is rebutted by defendant's own testimony. In his deposition, defendant stated that he was assigned to work on the problem loans in March of 1974. Therefore, even though he was not told, he had independent knowledge.

The final allegation of misrepresentation vis-a-vis the securities laws concerns the December of 1974 transaction. Defendant alleges that American's officers represented that the stock would be registered under the Securities Act of 1933. He further alleged that this representation was false.

758

This defense likewise is refuted by defendant's own testimony. Defendant stated that American's employees were working towards a registration and that "he was under an impression that . . . they were just about ready to conclude . . ." the registration. Even in his own testimony defendant does not refer to any representation that a registration would be made. He only had an impression and he knew that American was working on it. Clearly by his own testimony, defendant establishes that no misrepresentations were made concerning registration.

With respect to the four misrepresentations relied upon by defendant as a defense, the foregoing analysis indicates that, in fact, no material misrepresentations occurred. This leaves one final defense for consideration.

■■■ Defendant claims that he was forced to purchase the stock because he feared that if American failed, his job would be in jeopardy. Based upon this, defendant relies upon the defense of economic duress. This is simply not duress in the legal sense. Duress involves "wrongful acts . . . that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction." Restatement of Contracts, § 493 (1932). See *T. F. Pagel Lumber Co. v. Webster*, 231 Wis. 222, 285 N.W. 739 (1939). There was no duress here because there were no wrongful acts.

Based upon the foregoing, there is no genuine issue as to any material fact. Therefore, the FDIC's motion for summary judgment must be and hereby is granted.