**FEDERAL DEPOSIT INSURANCE CORPORATION, a United States Corporation**

v.

**FIRST MORTGAGE INVESTORS, a Massachusetts trust, Defendant and Third-Party Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for American City Bank & Trust Company, N.A., Third-Party Defendant.**

No. 78–C–212.

United States District Court,
E. D. Wisconsin.

Feb. 20, 1980.

---

William J. French, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for plaintiff and third-party defendant.

Russell A. Eisenberg, Howard, Peterman & Eisenberg, Milwaukee, Wis., for defendant and third-party plaintiff.

MEMORANDUM AND ORDER

WARREN, District Judge.

This is an action seeking recovery on a note made by defendant First Mortgage Investors ("FMI") payable to the American City Bank & Trust Company ("American"). On its face the note held by the plaintiff, Federal Deposit Insurance Corporation ("FDIC"), is a demand note in the principal sum of $1,000,000.00. The FDIC became a holder of the note when it purchased that note and other assets of American in order to supply the funds necessary to facilitate the assumption of certain American assets and liabilities by the Marine National Exchange Bank. There is no dispute that the FDIC properly acquired the note in issue.

The conflict in this litigation arises out of the tortured relationship between American and FMI. The parties in their briefs have reviewed the facts of this case at length in order to establish their positions on plaintiff's pending motion for summary judgment. Defendant has gone so far as to assert that the law and the evidence requires not only denial of plaintiff's motion, but also summary judgment in its favor.

Notwithstanding the parties' lengthy review of the facts of this case, they are really quite simple. A representative for FMI, Mr. Joseph Gratton, contacted American in late 1973 and discussed establishing a line of credit with the bank. By letter of August 21, 1973, Mr. Gratton set the ground rules for the credit. Among other things, Gratton promised that FMI would maintain a 10 percent compensating balance with American. He further indicated that the line of credit would not be used for approximately ten months. Consequently, about two weeks later, Gratton sent American a check for $100,000.00 to establish the account.

The line of credit was utilized sooner than expected because one of defendant's biggest borrowers, Walter Judd Kassuba, had filed a bankruptcy petition. Therefore, on February 21, 1974, FMI drew down on its line of credit. There is no dispute between the parties on the facts leading up to the February 21, 1974 loan; rather, what occurred thereafter has caused this controversy.

Without question, the bankruptcy of Kassuba had a profound effect on the financial condition of FMI. Thus, from February through June 6, 1974, FMI attempted to convince its creditors to enter into a revolving credit agreement (RCA). This arrangement would essentially permit FMI to defer payment of principal and merely pay interest charges during its period of financial strain. Of course, FMI through Gratton made overtures to American. The parties contest whether FMI and American reached some accord, but, at any rate, the debt incurred on February 21, 1974 was due May 30, 1974. Therefore, Gratton, by letter dated May 22, 1974, forwarded a demand note to replace the note due on May 30, 1974. Both the letter and the note itself indicate that the note was one due "on demand."

The demand note constituted a renewal of the February 21, 1974 loan. According to Gratton, FMI and American had orally agreed (1) that FMI would keep interest current on the demand and (2) that FMI would pay principal consistent with the terms of the RCA. At this time, American was in financial trouble itself and it had a strong interest in keeping FMI from defaulting. There is some question of just when FMI was obligated to pay, but certainly it was not due immediately. Going further, based upon the assertions made by Gratton in his affidavit, taken as true by the Court on this motion for summary judgment, American entered into an agreement in May to accept only interest.

Interestingly, on June 4, 1974, the director's loan committee of American met and approved the request of Messrs. Sinclair and Wilson, American employees, for American to participate in the RCA. However, the minutes of the July 17, 1974 meeting of the board of directors indicates that American had declined to participate. (Hudson affidavit, exhibit H). Nevertheless, the testimony of Gratton by affidavit is contrary.

In any event, the bank confiscated (set-off) the $200,000.00 compensating balance it held against the $1,000,000.00 debt and then it demanded payment which it did not receive. Suit was commenced in 1974. In August of 1974, the bank, however, apparently withdrew its demand for payment and instead offered to carry the note as current if FMI paid the accumulated interest due. FMI sent a check to cover the interest demanded for June and July and, in addition, covered the August interest. American accepted these payments.

Although the record in unclear as to why, American continued to pursue the litigation it had commenced. Furthermore, on the circuit level of the Wisconsin courts, American prevailed on a motion for summary judgment. The circuit court held that the evidence offered by FMI to vary the terms of the note was barred by the parol evidence rule and was, furthermore, insufficient to establish a contract.

FMI appealed the order granting summary judgment and the Wisconsin Supreme Court, after the FDIC had intervened, reversed the circuit court. *Federal Deposit Insurance Corp. v. First Mortgage Investors*, 76 Wis.2d 151, 250 N.W.2d 362 (1977). The court found that where an agreement is partially integrated, "that is the parties reduced some provisions to written form and left others unwritten," *id.* at 157, 250 N.W.2d at 1366, "it is proper to consider parol evidence which established the full agreement, subject to the limitation that such parol evidence does not conflict with the part that has been integrated in writing." *Morn v. Schalk*, 14 Wis.2d 307, 314, 111 N.W.2d 80, 84 (1961) *cited with approval in FDIC v. FMI*, 76 Wis.2d at 157, 250 N.W.2d 362. Finding that by their nature negotiable instruments are generally only partial integrations of the parties full agreements, and finding that a key term, the interest rate, was absent, the court held that an issue of fact remained. Specifically, the factual issue was whether the note was intended as a complete or only a partial integration of the parties' agreement. If the parties did not intend the instrument to be a complete integration of their agree-

ment, "then the parol evidence would be [admissible] to show the parties' true intent." *FDIC v. FMI*, 76 Wis.2d at 164, 250 N.W.2d at 369.

■ On remand, the FDIC again moved for summary judgment. This time it relied upon 12 U.S.C. § 1823(e) which provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest hereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

This section is applicable where the FDIC in its corporate capacity, as here, purchases certain assets of a closed bank to facilitate the sale to and assumption by another bank of the assets and liabilities of the closed institution. Without elaborating, the circuit court denied the motion ruling that section 1823(e) was not "a sword of Damocles" and holding that there were issues of fact remaining.

The FDIC next removed the action to this Court pursuant to 12 U.S.C. § 1819. FMI filed a motion for remand, but on several grounds its motion was denied. *Federal Deposit Insurance Corp. v. First Mortgage Investors*, 459 F.Supp. 880 (E.D. Wis.1978). The FDIC has now, in effect, renewed its motion for summary judgment relying upon 12 U.S.C. § 1823(e), the parol evidence rule, and a purported failure to contract. In resolving plaintiff's motion, the Court must also consider FMI's affirmative defenses of bad faith, estoppel and waiver. Finally, the motion of the FDIC, a third-party defendant as receiver of Ameri-

can, for summary judgment of defendant's third-party complaint must be resolved.

■ Addressing the 12 U.S.C. § 1823(e) ground first, this Court must initially determine the effect, if any, of the circuit court's denial of plaintiff's motion for summary judgment which was based upon this ground. Defendant asserts that under the so-called "law of the case" doctrine, the denial of the motion in the state trial court should foreclose plaintiff from again relying on this ground in a motion for summary judgment. Under this doctrine, as a general rule courts should not reconsider issues which have already been decided in an action. *Messenger v. Anderson*, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). However, where good reasons exist, prior rulings can be reevaluated taking into account the changed circumstances. *See Zdanok v. Glidden Co.*, 327 P.2d 944 (2d Cir. 1964).

■ Significantly, the trial court did not enter a final order or judgment in this matter. He could have reexamined his opinion at any time and this power was not lost by the removal of the matter to this tribunal. *See Hill v. United States Fidelity and Guaranty Co.*, 428 F.2d 112 (5th Cir. 1970). Of course, judicial economy is an important factor, for nothing is gained by reconsideration of issues where consistently the same result occurs. On matters of federal law, however, this Court is not even bound by the resolution by the state court. 1B Moore's Federal Practice, ¶ 0.404 at 504. Consequently, in light of the preliminary and scantily reasoned determination of the effect of section 1823(e) by the state trial court, and the federal question involved, this Court will consider whether 12 U.S.C. § 1823(e) provides a basis for summary judgment.

Under Rule 56(c) of the Federal Rule of Civil Procedure, summary judgment is appropriate if the pleadings, depositions, affidavits and other documents on file indicate that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In applying 12 U.S.C. § 1823(e) to the facts of this case, two issues emerge. First, whether the statute is even applicable and if so, second, whether, under the facts, it entitles plaintiff to the relief sought in its motion.

■ As pointed out by defendant, not all agreements are invalid against the FDIC in its corporate capacity. Rather, section 1823(e) renders nugatory an agreement not meeting the four prerequisites of the statute, if the agreement "tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under the section . . . ." The record clearly shows that the FDIC acquired the note in issue under the terms of section 1823(e). Defendant argues, however, that its oral agreement is not covered by the statute because the agreement does not defeat or diminish the asset in dispute.

Defendant points out, quite properly that under the purported oral agreement upon which it relies, the note is not on demand, but is instead to be paid in the future as other creditors are paid on their notes. From this defendant argues that the agreement does not reduce or defeat the interests of the FDIC because the FDIC will receive full payment, including interest, at some time in the future.

While defendant may continue to pay interest and eventually pay off the principal, this does not mean that a note payable in the future is equal to a note payable on demand. There is no dispute that on its face the instrument is a demand note. There is also no question that the alleged agreement relied upon by defendant is asserted to alter the time of payment on the face of the note. The Court cannot ascribe to the position taken by defendant FMI. It is self-evident that a note payable on demand is more valuable than one for the same principal sum which is due at some uncertain date in the future. Therefore, since the agreement does diminish the value of FDIC's asset, section 1823(e) is applicable to this agreement.

Notwithstanding the applicability of 12 U.S.C. § 1823(e), the real question is wheth-

er the section should be applied. It is readily apparent that if the alleged agreement at issue is put to the rigors of section 1823(e), the oral agreement will not be available as a defense to the suit on the note. Due to the unique posture of this case, however, several barriers must be considered and transcended before this Court can apply section 1823(e). Furthermore, even if the section is applied to foreclose defendant from relying on the purported agreement, several defenses raised by defendant must be considered.

The FDIC purchased this note from the receiver after American had already filed a lawsuit; therefore, the controversy surrounding the note was known or reasonably discoverable by the FDIC. Thus, this case is in a much different posture than certain others considered by this Court. In those other actions, the only available records were those kept by the bank. The Court will assume that the FDIC, when it purchased the note, knew or should have known of the pending litigation between American and FMI and of the alleged oral agreement. What, if any, effect should the FDIC's knowledge have on its right to rely upon section 1823(e)?

The FDIC is, among other things, an insurer of certain bank deposits. 12 U.S.C. § 1821(f). It can meet the demands of the depositors of a closed bank by either paying in cash or "by making available to each depositor a transferred deposit in a new bank . . . ." *Id.* The powers provided by section 1823(e) are, by the terms of the statute itself, designed to protect the FDIC by enabling it to minimize the costs that it incurs in meeting its insurance obligations. *See FDIC v. Rockelman,* 460 F.Supp. 999 (E.D.Wis.1978).

■ In enacting the legislation to create the FDIC, the purpose of Congress was "to promote the soundness of banking and to aid the government in the discharge of its fiscal transactions." *Freeling v. Federal Deposit Insurance Corp.,* 221 F.Supp. 955 (W.D.Okl.1962). In performing its duties, "[t]he FDIC works to bring to depositors sound, effective and uninterrupted opera-tion of the banking system with the resulting safety and liquidity of bank deposits." *Federal Deposit Insurance Corp. v. Rockelman,* 460 F.Supp. at 1002. By the first paragraph of section 1823(e), the FDIC is empowered to take steps to ensure the liquidity of a closed bank, including the transfer of assets and liabilities to another bank. Furthermore, it can also purchase certain assets of the defunct institution.

■ In 1950, section 1823(e) was amended to add the second paragraph which invalidates agreements which do not meet the four prerequisites set forth in the section. H.R. Report 2564, 81st Cong., 2d Sess., 1950 U.S.Code Cong.Service at 3765, 3774. The second paragraph of section 1823(e) protects the FDIC from secret agreements. The FDIC, when it deems it necessary, can purchase certain assets of a closed bank to protect itself and the bank depositors. Because of the protection afforded the FDIC by the second paragraph of section 1823(e), it can rely upon the records of the bank in purchasing the assets. This is an important tool which permits the assessment of various assets in an orderly and dependable fashion. Therefore, the FDIC need not go beyond the bank records in performing its functions.

If, however, the FDIC must examine records outside the bank to evaluate an asset, the burden borne by it is much greater. Here, for example, the FDIC would have had to examine the defenses raised by FMI in its answer to American's complaint plus any evidence presented by FMI in opposition to the pending motion for summary judgment. Furthermore, the FDIC would have the burden of assessing the defenses presented. In essence, it could not then rely upon the records of the closed bank.

Assuming that the FDIC could have assessed the value of the note and thus have paid less, this would not provide the FDIC with protections for which the second paragraph of section 1823(e) was designed. If the FDIC does not pay depositors by facilitating the transfer of assets to another bank, then its other alternative is to pay cash to the depositors. In either event, the

FDIC must pay out an adequate amount of funds to cover that portion of the deposits of the closed bank for which the closed bank has inadequate reserves to cover. In one method, the cash is transferred to the transferee institution; in the other, the money goes directly to the depositors. The same amount of cash should be required and, consequently, no matter how the asset is valued, the FDIC's burden of covering the deposit liabilities is essentially the same. Conceivably, when the bank's affairs are completely closed, the FDIC may reap a net gain, but such an event is highly unlikely.

The public policy expressed in section 1823(e) emanates from the Supreme Court's opinion in *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). There the Court held, for the protection of the FDIC as an insurer, that a secret agreement is not available as a defense against a suit by the FDIC to recover on a note acquired from a bank insured by the FDIC. The Court stated:

> Plainly one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners. . . . The test is whether the note . . . would tend to have that effect [of deceiving creditors or the public authorities]. *Id.* at 460, 62 S.Ct. at 680.

Admittedly, the secret agreement in *D'Oench* that the note would not be enforced went farther than that involved here, where the alleged oral agreement merely provides for an uncertain delay of payment. While D'Oench prohibited the use of secret agreements which would render a note worthless, it did not indicate the effect of an agreement that might only diminish the value of the note. Congress, in passing the second paragraph of section 1823(e), expanded on the protections afforded to the FDIC by *D'Oench*. All this Court need do, as has already been done, is find that the agreement diminishes the interest of the FDIC in the asset. Having found that the agreement does reduce the value of

the note, the irrebuttable statutory presumption that defendant FMI knew that the agreement concealed the truth from the Comptroller comes into play. By the purported secret agreement to transform a demand note into a note without a due date, the true state of the bank's affairs were concealed from the bank examiners which "would tend to have [the] effect . . . ." of deceiving the Comptroller. If anything, section 1823(e) is a means by which banks and their creditors are forced to make all information available for the bank examiners. If the relationships involve a note made by a creditor and the creditor establishes a contract with the bank granting the creditor certain rights, the agreement must be a bank record as described in section 1823(e). The statute permits nothing less and neither should this Court.

Without question, the true state of the alleged relationship between American and FMI was not a record of the bank available to the perusal of the bank examiners. The true state of American's condition was distorted by an oral secret agreement. Furthermore, the agreement concealed from the bank examiners was, in the Court's opinion, quite significant. As a result, the agreement is unavailable as a defense to the FDIC's suit on the note at issue.

■ Several other issues are raised which must be considered in passing on plaintiff's motion for summary judgment. One argument made by defendant is that the FDIC, in its corporate capacity, stands in the shoes of American. As such, defendant asserts, FDIC cannot utilize section 1823(e) to "upgrade" the asset in issue. This argument is without force because the FDIC is suing in its corporate capacity as purchaser of the note in dispute. As such, it is entitled to the protections of section 1823(e).

In *Federal Deposit Insurance Corp. v. Vogel*, 437 F.Supp. 660, 663 (E.D.Wis.1977), this Court held that "Once the FDIC, acting in its corporate capacity, purchases the assets of the closed bank, it is simply not a successor in interest to the closed bank." *See also FDIC v. Ashley*, 585 F.2d 157 (6th Cir. 1978); *FDIC v. Godshall*, 558 F.2d 220,

223 (4th Cir. 1977); *Freeling v. Sebring*, 296 F.2d 244, 245 (10th Cir. 1961); *FDIC v. Abraham*, 439 F.Supp. 1150, 1151 (E.D.La. 1977); *FDIC v. Design and Development*, 73 F.R.D. 442, 443 (E.D.Wis.1977); *Stern v. American Bankshares Corporation*, 429 F.Supp. 818, 828 (E.D.Wis.1977). Defendant's argument is without force simply because section 1823(e) is designed to afford the FDIC, in its corporate capacity, with certain protections the effect of which is to "upgrade" assets purchased by the FDIC from a closed bank under the circumstances set forth in section 1823(e). Since, as noted earlier, the FDIC acquired the note in issue to aid a purchase and assumption arrangement with another bank, the FDIC is a holder of the note under section 1823(e) and entitled to the protections of the statute.

■ Next defendant asserts that section 1823(e) and the reasoning of *D'Oench* are inapplicable because it entered into the alleged agreement with American in "good faith." The mental state of FMI has absolutely no bearing on availability of the defense provided in section 1823(e). The only questions the Court need concern itself with are whether the agreement is secret, which it was, and whether the agreement diminished the value of the asset, which this Court found the agreement did. FMI's claim that its "good faith" has a bearing on the effect of section 1823(e) is spurious at best and, therefore, nothing further need be said about this argument.

■ Two other arguments are raised which provide FMI with no aid. It claims that section 1823(e) has nothing to do with the admissibility of evidence. This statement is patently wrong. The agreement, if any, is inadmissible because, unless it meets the four prerequisites of section 1823(e), the agreement is unavailable as a defense and is thus irrelevant. The final unconvincing argument is defendant's claim that since it is not saying the note is invalid, section 1823(e) does not come into play and defendant can repay the note at any time. This assertion flies in the face of section 1823(e) whose only test of the invalidity of an agreement is whether it "tends to diminish or defeat the right, title or interest of the [FDIC]" in the asset. Having found that the alternation of the note in issue from one payable on demand to one payable at some uncertain date in the future does diminish the FDIC's right, title or interest in the asset, section 1823(e) is clearly available.

The Court will next turn to several defenses raised by FMI, namely estoppel, waiver and lack of good faith.

■ Looking first at the issue of good faith, this defense arises out of Wis.Stat. § 401.203 which imposes a duty of good faith on the parties to a promissory note. First, to the extent that American failed to perform under the secret agreement, if any, with good faith, this has no bearing on the FDIC's claim since to permit otherwise would result in negating the salutory effect of section 1823(e). Second, however, FMI claims that the FDIC acted in bad faith because it has not credited FMI with interest paid. The FDIC in the affidavit of James P. Hudson acknowledges this interest which they must credit to FMI. Having admitted the payments, the FDIC simply has not acted in bad faith. The defense of Wis.Stats. § 401.203 is unavailable to defendant.

■ The defense of estoppel is also of no help to defendant. Somehow defendant tries to apply the wrongdoing or the inadvertence of American to the FDIC. Section 1823(e) simply negates this defense since the FDIC holds this note as a purchaser and not a receiver. As noted earlier, it does not stand in the shoes of American. Admittedly the FDIC took this case up where American left off, but this Court finds that its status is still that of a holder of the note. It had no duty, contrary to defendant's assertions, to dismiss, even though American may have acted wrongfully. The estoppel argument is unavailing since nothing the FDIC has done to date is either wrongful or outside of the scope of its authority.

■ A third defense is waiver. Again FMI relies upon wrongdoing of American. Whatever American did wrong, if anything, simply has no effect upon the suit being

prosecuted by the FDIC. That entity has a unique status under section 1823(e). To permit the wrongdoing or waiver of American to affect the FDIC would deprive the FDIC of the benefits of section 1823(e). This Court will not and does not interpret section 1823(e) to give effect to the validity of the secret agreements when the party bank acts wrongfully or in contravention of the agreement. The bank's acts are of no effect, even if the bank had, as here, already commenced an action. The defense of estoppel is purely specious.

 There are two final matters to be discussed before passing on plaintiff's motion. First, defendant argues that the amount due is unclear. This is not correct. The affidavit of Mr. Hudson sets forth the amounts due, the amounts already paid, the set-off made, and the interest rate. There is no contrary evidence showing this evidence is disputed or subject to dispute. Thus, the amount is established for purposes of summary judgment. Rule 56(e) of the Federal Rules of Civil Procedure. Secondly, defendant argues that the set-off was wrongful. This is not a defense available against the FDIC in its corporate capacity, because FDIC is suing on the note rather than as the receiver. The proper party defendant is the receiver of American. *FDIC v. Vogel*, 437 F.Supp. at 665.

In summary, the Court would note that the FDIC has conclusively established that it is entitled to recover on the note in issue and, therefore, the FDIC's motion for summary judgment on the main cause of action must be granted.

Besides seeking summary judgment on the note itself, the FDIC, as receiver, also seeks summary judgment on the third-party complaint. In its third-party action, FMI claims that American wrongfully took a set-off of the $200,000.00 compensating balance deposited in American. Therefore, FMI seeks damages in the amount of $200,-000.00. The FDIC claims that American's set-off was proper.

FMI's claim is that the loan was not in default and thus seizure of the compensating balance was illegal. Furthermore, FMI claims that the seizure was without notice and prior to any demand for payment.

 Defendant's counterclaim is based again upon the purported oral agreement. Defendant claims that the demand note was really something more, *i. e.,* that the note was payable at some uncertain future time. The real question again is whether the secret agreement is of any force. This Court is of the opinion that the agreement is not.

Whether the parol evidence rule bars proof of the alleged oral agreement is a question left open by the Supreme Court of Wisconsin in *FDIC v. FMI, supra.* The question need not be resolved here since the alleged secret agreement is unavailable on other grounds.

The Court's ruling in *D'Oench, Duhme & Co. v. FDIC, supra,* is based upon the need to protect the FDIC in its capacity as an insurer of bank deposits. The banking authorities, however, also protect a creditor class in addition to the FDIC. In order to adequately perform their duties, the bank examiners must have complete bank records. The agreement alleged here was secret, and, consequently, an adequate assessment of American's condition could not have been made at the time in question.

To give effect to the secret agreement defendant relies upon would negate the purposes of section 1823(e). In not giving effect to the secret oral agreement for purposes of defendant's third-party claim, this Court is insuring that borrowers will only make agreements that conform with the provisions of section 1823(e). It is clear from the Court's holding in *D'Oench* and the Congressional policy expressed in section 1823(e), that those doing business with federally insured banks should avoid secret oral agreements. Failure to do so exposes the borrower to the risk that the rights provided by the agreement will be unavailable. Therefore, the FDIC's motion for summary judgment on the counterclaim will be addressed with the note as a demand note.

The single most significant point to be made with respect to the counterclaim is that, contrary to the apparent position taken by defendant, the relation between

American and FMI with respect to the compensating balance was an creditor-debtor, respectively. In *United States v. Butterworth-Judson Corp.*, 267 U.S. 387, 394–95, 45 S.Ct. 338, 340, 69 L.Ed. 672 (1924), the Court described the relationship between banks and depositors.

> Ordinarily, the relation existing between banks and their depositors is that of debtor and creditor, out of which the right of set-off arises. As a general rule, in the absence of an agreement to the contrary, a deposit, not made specifically applicable to some other purpose, may be applied by the bank in payment of the indebtedness of the depositor. [citations omitted].

Defendant has no quarrel with this rule, but argues, instead, that the set-off was premature since it was made before a demand for payment was made and after American had agreed to accept interest payments.

■■ Generally, a bank can take a set-off on a matured debt without any notice to its debtor. *Fletcher v. Rhode Island Hospital Trust National Bank*, 496 F.2d 927, 931 (1st Cir. 1974); 10 Am.Jur.2d, *Banks*, § 669 at n.8 (1963). A prior demand for payment on the note in question was unnecessary because the note was due on demand and was thus mature. As stated in 11 Am.Jur. *Bills and Notes*, § 286 at 311:

> A demand note is payable immediately on the date of its execution—that is, it is due upon delivery thereof; and, unless a statute declares otherwise, or a contrary intention appears expressly or impliedly upon the face of the instrument, a right of action against the maker of a demand note arises immediately upon delivery *and no express demand is required to mature the note or as a prerequisite to such right of action* —commencement of a suit being sufficient demand for endorsement purposes. [emphasis added].

To have done otherwise in this case would have tipped American's hand and the funds would have gone swiftly, leaving American without the protections intended by the compensating balance.

■■ The note as a demand note was due upon execution. Contrary to FMI's assertions, it did have an obligation to pay immediately. As indicated earlier, the note is being treated as stripped of any alleged oral agreement which American may have entered into. American, now in receivership, is being considered by this Court as having had a demand note which was due by its very terms. Therefore, American was correct in taking a set-off to collect a debt owing to it. Consequently, defendant is not entitled to the $200,000.00 that was set-off and is not entitled to any damages for the set-off. The FDIC's motion for summary judgment must be granted.

In passing on the motions of the FDIC for summary judgment, the Court recognizes that FMI relies heavily upon alleged oral agreements made between American and FMI. The result of this decision is to totally negate the effect of such agreements. When it considered this case, the Wisconsin Supreme Court approached it from the narrow prospective of the effect of the parol evidence. This Court, in contrast, approached this case from the prospective of the banking laws.

There is no question that the banking industry and federally insured banks are extensively regulated. In order to carry out the regulations, the bank examiners must have access to complete records. Inadequate records subvert the regulation process. Secret agreements such as relied upon by FMI here must be given no effect in order to discourage borrowers from entering into such arrangements with banks. To do less would seriously cripple the efforts of the government's control of the industry.

In summary, it is hereby ordered that the motions for summary judgment of the FDIC, as plaintiff and as third-party defendant, must be and hereby are granted.

It is further ordered that the FDIC draft a proposed judgment within 10 days of the date of this order for Court approval.