**In re Ronald BOMBARD, Debtor.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, In Its Corporate Capacity, Plaintiff,**

**v.**

**Ronald BOMBARD, Defendant.**

Bankruptcy No. 4–82–00737–G.
Adv. No. 4–83–0072.

United States Bankruptcy Court,
D. Massachusetts.

May 1, 1986.

Paul A. Devin, Boston, Mass., for plaintiff.

Lawrence F. Army, Worcester, Mass., for debtor/defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

This matter is before the Court on the complaint of the Federal Deposit Insurance Corporation (the "FDIC"). The FDIC seeks a determination that a debt assigned to it by the Mohawk Bank and Trust Company (the "Bank") and owed by Ronald Bombard ("Bombard" or the "Debtor") is

nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[1] The complaint was heard on April 6, 1983 and June 21, 1983.

## FACTS

On or about November 9, 1979, the Debtor, who spent most of his adult life buying and selling used automobiles, executed an unsecured promissory note in the face amount of $35,000, payable on December 12, 1979. At the time, the Debtor had been in the employ of United Chevrolet, Inc., a corporation controlled by Richard Robidoux ("Robidoux"), for approximately six months. According to the Debtor, he was induced to sign the promissory note by Robidoux, who assured him the note was secured by the Westboro Speedway, a property owned by Robidoux. Although the Bank issued a check in the Debtor's name, Robidoux, allegedly as part of a scheme to evade the Bank's lending limitation of $60,000 to any one individual or entity, obtained the proceeds of the note from Bombard. The Debtor was aware of this scheme as evidenced by his signing, as a witness, at least five other notes totalling $230,000 when the makers of the notes were not in his presence.[2]

Bombard admitted in deposition testimony, which testimony was introduced into evidence without objection at the trial, that he had no intention of paying the November 9th note or a subsequent secured note dated December 10, 1979. The latter note, which matured on March 10, 1980, was a renewal note also in the face amount of $35,000. Although this note was purported to be secured by the Westboro Speedway, the Debtor admitted that he did not own the collateral securing the note. Furthermore, the debtor admitted he had insufficient assets to pay either note. Nevertheless, the Debtor insisted that he had no intention of defrauding the Bank and that he believed that Robidoux would pay the debt incurred in his name to the Bank. Indeed, the Debtor suggested he was as much a victim of Robidoux's machinations as the Bank, pointing to his limited education and domination by Robidoux.

At the trial, the parties stipulated that the Commissioner of Banks of the Commonwealth of Massachusetts closed the Bank on November 16, 1980 and named the FDIC as the liquidating agent; that the FDIC assigned to itself, in its corporate capacity, assets of the Bank; that certain of those assets were sold to a successor bank, as part of a purchase and assumption agreement, but that other assets were retained by the FDIC, including the December 10, 1979 note executed by Bombard; that payment was demanded of Bombard by letter dated March 12, 1980; that no payment was made by the Debtor; and that the first time the FDIC learned that Bombard had no intention of paying the note was at his deposition on November 3, 1982, which took place approximately five weeks after the filing of the Debtor's bankruptcy petition on September 22, 1982.

## DISCUSSION

 To sustain an objection to the dischargeability of a debt under 11 U.S.C.

---

1. Section 523(a)(2)(A) provides:

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...
 11 U.S.C. § 523(a)(2)(A).
 In its complaint, the FDIC also sought to have the debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) (Count II) and to bar the Debtor's discharge pursuant to 11 U.S.C.

§ 727(a)(3)(Count III). The latter count was not properly plead in that it neither identified section 727(a)(3) as the Code section upon which the FDIC was relying nor stated that the FDIC was seeking to bar the Debtor's discharge. With respect to both Counts II and III, however, at the conclusion of the hearing, counsel for the FDIC stated that the FDIC was not pursuing these Counts.

2. The Debtor testified about his participation in the scheme to circumvent the Bank's lending limitations only after receiving immunity from prosecution pursuant to an order of United States District Court Judge Frank H. Freedman dated May 19, 1983.

§ 523(a)(2)(A), the objecting party must establish:

'1. That the debtor made materially false representations; 2. That the debtor knew the representations were false at the time he made them; 3. That the debtor made the false representations with the intention and purpose of deceiving the creditor; 4. That the creditor reasonably relied upon the debtor's materially false representations; and 5. That the creditor sustained loss and damages as a proximate result of the materially false representations made by the debtor.'

In re Dixie-Shamrock Oil & Gas, Inc., 53 B.R. 262, 266 (Bankr.M.D.Tenn.1985). See also In re Cokkinias, 28 B.R. 304, 306 (Bankr.D.Mass.1983). The plaintiff must prove actual or positive fraud involving moral turpitude or intentional wrong doing, not merely implied fraud. In re Dixie-Shamrock Oil & Gas, Inc., 53 B.R. at 266. Although a mere promise to be kept in the future is not sufficient to make a debt nondischargeable, the deliberate misrepresentation by the debtor of his intention to pay in the future may constitute a false representation for purposes of section 523(a)(2)(A). In re Cokkinias, 28 B.R. at 306; L. KING, 3 COLLIER ON BANKRUPTCY ¶ 523.08[04] (15th ed.1985). Furthermore, the standard of proof required under section 523(a) is the "clear and convincing" standard which requires a significantly higher quantum of proof than the "preponderance of the evidence" standard. In re Emery, 52 B.R. 68, 70 (Bankr.E.D.Pa. 1985). Each of the five elements must be proven using the "clear and convincing" standard, since exceptions to discharge are to be strictly construed in favor of the debtor so as to afford the honest debtor the fresh start promised by the Bankruptcy Code. In re Cokkinias, 28 B.R. at 306. However, it is not necessary that the property obtained by false pretenses be actually procured for the debtor himself. In re Tom Woods Used Cars, Inc., 23 B.R. 563, 569 (Bankr.E.D.Tenn.1982); In re Pirnie, 16 B.R. 65 (Bankr.D.Mass.1981).

■ The Court finds that the FDIC has established all the required elements of section 523(a)(2)(A) by clear and convincing evidence. The Debtor's actions evidence nothing other than an intent to defraud the Bank. Bombard admitted that when he signed the notes he did not intend to pay them, rather he was expecting Robidoux to satisfy his obligations. Although the Debtor would have the Court believe he was an unsophisticated lackey, the Debtor's Schedules reveal that he had borrowed substantial amounts of money from various banks in the past. Clearly, he knew what a note was and its effect, not only from his personal borrowings but from his involvement in the purchase and appraisal of cars. Yet the Debtor was willing to turn the proceeds of his note over to Robidoux to help him acquire funds in excess of the Bank's lending limits and falsely witness other notes executed for the same purpose. Clearly the Debtor's assertion that he expected Robidoux to pay does not excuse his complicity in obtaining funds for Robidoux by executing a note he had neither the intention nor ability to pay.

With respect to the FDIC's proof of reliance, the Court must observe that, but for the FDIC's special position vis a vis the Debtor discussed below, the proof of the Bank's reliance was unpersuasive. The FDIC called Richard Saccone ("Saccone"), the Bank's former president, as a witness. Saccone testified that the Bank's executive committee considered the Debtor's loan to be collateralized by funds due from General Motors, but that the Bank would look ultimately to the Debtor. But, Saccone lacked first hand knowledge of the transactions in question. However, since the FDIC is not a successor in interest to the bank, FDIC v. Vogel, 437 F.Supp. 660, 663 (E.D.Wis.1977), the deficiency in proof relative to the Bank's reliance is of little consequence because, regardless of the Bank's reliance on the Debtor's signature, the FDIC was entitled to rely on the signature as a matter of law.

■ The FDIC acquired Bombard's note of December 10th as part of a purchase

and assumption agreement whereby the FDIC arranged for a solvent bank, in this case the BayBank First Easthampton, N.A., to purchase assets from an insolvent bank, Mohawk Bank & Trust Company. Purchase and assumption agreements are governed by 12 U.S.C. § 1823(e), which is applicable where, as here, the FDIC, in its corporate capacity, purchases assets of a closed bank to facilitate the sale and assumption by another bank of the assets and liabilities of the closed institution. *Cf. FDIC v. First Mortgage Investors,* 485 F.Supp. 445, 449 (E.D.Wis.1980). Section 1823(e) provides in relevant part:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or the board of directors of the bank or its loan committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e). This paragraph has been held to protect the FDIC from secret agreements by Judge Warren of the United States District Court for the Eastern District of Wisconsin. *FDIC v. First Mortgage Investors,* 485 F.Supp. at 451. According to him,

> The FDIC, when it deems it necessary, can purchase certain assets of a closed bank to protect itself and the bank depositors. Because of the protection afforded the FDIC by the second paragraph of section 1823(e) [quoted above], *it can rely upon the records of the bank* in purchasing the assets. This is an important tool which permits the assessments of various assets in an orderly and dependable fashion. Therefore, *the FDIC need not go beyond the bank records* in performing its functions.

*Id.* (emphasis supplied). The effect of section 1823(e) is to "upgrade" assets purchased by the FDIC and to give the FDIC rights akin to a holder in due course. Indeed, only the so called "real defenses" of the type outlined in section 3–305 of the Uniform Commercial Code (e.g., fraud in the factum) are available against the FDIC in its corporate capacity. *FDIC v. Balistreri,* 470 F.Supp. 752, 756 (E.D.Wis.1979); *see also FDIC v. Rockelman,* 460 F.Supp. 999, 1003 (E.D.Wis.1978).[3] As a consequence, the defense raised by Bombard, which is best characterized as involving fraud in the inducement because it suggests an agreement underlying the notes, rather than the invalidity of the contracts inherent in the making of the notes, is not available to him against the FDIC in its corporate capacity. 470 F.Supp. at 756. *Accord Gunter v. Hutcheson,* 674 F.2d 862, 873 (11th Cir.1982) ("[A]s a matter of federal common law, the FDIC has a complete defense to state and common law fraud claims on a note acquired by the FDIC in the execution of a purchase and assumption transaction, for value, in good faith, and without actual knowledge of the fraud at the time the FDIC entered into the purchase and assumption agreement.").

In view of the foregoing, the entire record of the adversary proceeding and the arguments of counsel, whether or not specifically mentioned herein, the Court hereby finds that Bombard's debt to the FDIC is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

---

**3.** In *Rockelman,* the court stated:
[A]lthough the FDIC, in its corporate capacity, is not a holder in due course within the meaning of the term under the Uniform Commercial Code, Congress intended by means of section 1823 to clothe the Corporation with the protection afforded a holder in due course and shield the Corporation against many defenses that would otherwise be available. This is the purpose and effect of this section. 460 F.Supp. at 1003.